125 F.3d 31
 134 Lab.Cas. P 33,580, 4 Wage & Hour Cas.2d
(BNA) 108
 James Edwin CLOSE, James R. Collins, Lawrence G. Clare,
William G. Hastback, Richard T. Lepkowski, Patricia E.
O'Connor, James V. Bradley, Gerard C. Letendre, Edward
Woltmann, Gerard E. Black, Ruben F. Enriquez, Robert C.
Knizek, Karen C. Ore, Vincent Rapacciuolo, William
Toffenetti, Joshua Weiss, Edgar J. Robinson, Elton Jay
Dietrich, Nicholas Adams, Charles Antzak, Thomas A. Atlas,
Matthew Bewtiuegna, Michael J. Berman, Raymond Bordoni,
Wayne G. Borek, Charles R. Bradley, Jr., John J. Calagna,
Albert Caronia, Ronald M. Cerniglia, Thomas O. Carey,
Stephen Cohen, William F. Coleman, Leo T. Connolly, Carl
Cornelius, Michael T. Cotton, Robert L. Covel, Donald F.
Darmer, Vijaya Deshpande, Kathleen R. Dick, Michael E.
Doody, John J. Dowling, Nathan Erlbaum, James Evensen, Roy
Fuller, Jerome L. Gershenson, Daniel D. Gottlieb, L. Daniel
Gorritz, Patricia Grabianowski, David N. Green, Paul R.
Greenfield, Ben Grey, Robert Hansen, William C. Heilmann,
Eric R. Heim, Mary Iandiorio, Robert H. Jones, Michael J.
Kanuk, Neville Kerr, Frank A. Klinowski, Jeffrey W. Kimmer,
Melisande Kopp, Richard J. Kotecki, Nancy A. Kunz, Roseanne
S. Krytak, Sandra Liburd, Sue M. Malatesta, Ralph A.
Marcucio, John E. Marsden, Peter J. Martinelli, John Mason,
Matthew Mazzamurro, Paul E. McAnany, Walter F. McGuire, Mary
E. McIntosh, Daryll K. Messner, Lillian M. Milne, Frank
Montemarano, Stephen J. Moore, C. Kelley Morgan, Eileen M.
O'Brien, Hugh D. O'Rourke, Ronald C. Palumbo, Walter J.
Parish, Anthony M. Piscitelli, Paul Polansky, James Quinn,
Amparo B. Quizon, Theodore M. Raab, Gideon Rabino, Edward
Ratowsky, Richard A. Rink, Don E. Russell, Celia M. Sagullo,
Adolfo Santiago, Ann B. Sartoris, Judith L. Schoonover,
Jeffrey A. Schulkind, Ralph Schwartz, James W. Sefren, Owen
P. Shevlin, Jr., Leonard Siegel, Robert P. Snyder, Sr.,
Larry A. Solomon, Charles Subelka, Koon S. Tang, Sajni M.
Thadani, MaryEllen Tobin, Wayne R. Ugolk, Quentin G.
Vannortwictk, Thomas R. Verburg, Sarah E. Washington, Allan
Wasserman, Lawrence R. Watts, Trina L. Weisman, Carl P.
Wiedemann, Ronald G. Wierzbicki, John R. Williams, Donald
Zacchea, George Zaferes, Edward G. Abelson, Virginia K.
Adams, Rebecca Jean Anderson, Harvey Arnett, Robert E.
Arnold, Kathleen M. Ashline, Charles G. Awalt, Roy D.
Bailey, Dennis A. Balson, Jeffrey Baseel, Victor Batorsky,
Steven Baum, Wayne R. Bayer, Arthur Berger, Michael J.
Berman, Barbara Berman, Susan D. Biscup, Edward P. Blackmer,
David D. Blair, Andris Blumbergs, Marianne J. Bono, Steven
R. Botsford, Joan E. Boyd, Paula Bradwell, Johathan M.
Brandes, Michael Brinkman, Susan Bubb, Donald H. Cadwell,
Peter Campbell, Philip Anthony Casoria, Kevin J. Casutto,
Salvatore V. Catena, Philip H. Chase, Louis A. Chiarella,
Kenneth Chieu, Karen Chytalo, D. Frank Coates, Jeanne A.
Compitello, Judy A. Cooper, John Daniel Corcoran, Vincent J.
Corcoran, Michael Corso, Donald J. Csaposs, Gail Arden
Culver, Thomas A. D'Ambrosia, Richard F. Darius, Michael
Daskalakis, Diane T. Dean, Jennifer J. Dean, Barbara Dell
'Acqua, William Mark Derespino, Lester J. Dier, Leonard
Dimon, Mary Ellen Dix, James R. Dolan, Edward F. Dombroski,
Sere Jacques Dos, Michele Drugan, Frank Jon Duda, Luann
Evans, Robert S. Evans, Lois M. Fairchild, David J. Fallon,
William Fedoryk, Douglas P. Ferguson, William F. Fighter,
Bruce W. Finster, Richard J. Fischer, M.D., Scott J. Foti,
Richard J. Frakes, Mark Friedlander, Lawrence Friedman,
Wayne E. Fuhrman, George Gaborow, Frank Gannon, Charles F.
Gardephe, Robert A. Gebhardt, Joel H. Gedell, Wayne E.
Georgia, Joseph Giammichele, Marilyn Gimber, Barry J.
Gloeckner, Keith D. Goertz, Mark Goldhaber, Stephen Granger,
James A. Gray, Barbara J.S. Greenberg, Ira M. Gross,
Charlene Gurian, Judith A. Hall, Francis Hamblin, Charles T.
Hamilton, Mark J. Harris, Michael M. Hayden, Patrick T.
Hayes, Deborah J. Heaphy, James M. Heekin, Joseph Hein,
Gerald K. Heitzman, Thomas E. Herkenham, William D. Hewson,
Keven R. Hintz, David E. Hodgkins, Maureen D. Hoffa,
Patricia Hopp, Martin B. Moran, Nancy L. Hotaling, George W.
Howard, Betty Ann Hughes, Gayle D. Hull, Lawrence Hunter,
Nancy L. Huss, Craig D. Jackson, Craig S. Jackson, George A.
Jackson, Richard H. Jacobs, Roberta Jainchill, John F.
Kaminsky, Stephen Karnath, Bruce B. Kastor, Michael T.
Keenan, William M, Kelly, Gregory M. Ketz, Kenneth F.
Keutmann, Edward J. Kingsley, Jonathan S. Klob, Mark A.
Klotz, Edward A. Kokalas, Michael J. Komoroske, Lydia J.
Kosinski, Henry J. Kuczynski, Tae S. Kwon, Khin M. Kyi,
M.D., Francis P. Lahey, Ellen Laquire, John J. Lavalle,
Raymond Lawrence, Anastasia D. Leach, Edmina C. Lee, Mike
Lepore, Orest Lewinter, Donnie Lewis, Geneva M. Lewis, Mark
B. Lewis, Gerald H. Liepshutz, Jeanne V. Linden, Dennis J.
Lucia, Ann F. Lundin, Samuel J. Mark, M. Charles Markham,
Donald W. Marley, Lamont A. Martin, Jonathan Maskin, Anthony
Mauro, Susan D. McCormick, Mark A. McDermott, Michael P.
McDermott, Raymond T. McDougall, Michael J. McGarry, Charles
R. McHugh, Jr., Carlton J. Meadows, Anthony J. Memoli, Steve
Merr, Thomas O. Middlebrook, Peter R. Miller, Stephen R.
Mooradian, Kenneth V. Moore, Terry L. Moore, James C.
Moragne, Ralph Morgenstern, Albert H. Muench, Brian R.
Murphy, John P. Murphy, James E. Murray, Mario Musso,
Lawrence A. Myers, Jerold A. Nadel, Kevin P. Neary, James F.
Nelson, William G. Niezgoda, David Van Nordstrand, Thomas F.
Nytch, Paul J. Obernesser, Terrence P. O'Neill, Louis P.
Oliva, Karen B. Papandrea, James M. Parmelez, Ronald D.
Passmore, David Patten, Arthur D. Perkins, Dale J. Peterson,
Peter M. Pettit, Richard A. Phipps, Gerald F. Pietraszek,
Andrew H. Placito, Jr., Brian Platt, Melvin Plavin, Edward
Powers, Salvatore F. Priore, John C. Proud, Paul E. Pugh,
Richard M. Raczkowski, William O. Radley, John T. Raffa,
Patrick J. Regan, John N. Reynolds, Michael F. Rivara, Scott
A. Rodabaugh, Laurence Ross, Abraham Rozman, Robert J. Rudd,
Edward Rudder, John C. Ryan, Theodore P. Ryan, Ann L.
Rymski, Philip Salerno, Clifford P. Salo, Nirmala Sankaran,
Patricia Markham Santillo, Alan Saperstein, James Santucci,
Andrew W. Schellhammer, Harry Scholl, Michael Schongar,
Robert K. Scott, Jesse Selzer, Steven Septer, Jesus S.
Serrano, Gregory P. Sharlow, Kathleen M. Shea, William M.
Shusda, Robert P. Shutter, Larry Signer, Peter W.
Silberstein, Richard A. Sill, Don Sislowski, Douglas A.
Smith, Gale Smith, Gerald P. Smith, Richard Socher, James P.
Soldo, Mark Solomon, Charles J. Stock, Doris D. Stout,
Donald A. Streeter, Steven P. Struzinsky, Eleanor Zieske
Symeon, Benjamin J. Taylor, Martin Thompson, Elaine Tober,
Walter E. Tolcser, Raymond C. Toth, David H. Traynor, Jay T.
Trembly, Gale Trentalange, Harvey B. Tress, Jonah
Triebwasser, Joseph R. Tuttle, Jacqueline Donovan Unser,
John P. Valenti, G. Van Hoesen, Sarah Van Leer, Mark Edgar
Van Valkenburg, Santiago Vargas, Maria Velazquez, David
Vitale, Edward J. Wade, Philip G. Waite, Carl W. Walls,
Vernon B. Walter, Miggie Warms, Stephen R. Warner, Neal P.
Warren, H. Gene Washington, Denise Waxman, Alice M. Weber,
Wanda F. Webster, Arthur Weiner, Ronald White, Carl C.
Widmer, Richard L. Williams, William R. Williams, Jr.,
Thomas K. Wong, James P. Zabawa, James T. Zampier, Janet
Spencer Quinn, Plaintiffs-Appellants,
v.
STATE OF NEW YORK, Defendant-Appellee.
 No. 1248, Docket 96-9252.
 United States Court of Appeals,
Second Circuit.
 Argued April 23, 1997.
Decided Sept. 4, 1997.
 
 Lisa M. King, Albany, New York (William P. Seamon, Albany, NY, of counsel), for Plaintiffs-Appellants.
 Daniel Smirlock, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, Albany, NY, on brief), for Defendant-Appellee.
 Before: OAKES, ALTIMARI and JACOBS, Circuit Judges.
 ALTIMARI, Circuit Judge:
 Plaintiffs-appellants appeal from an order entered on August 19, 1996 in the United States District Court for the Northern District of New York (McAvoy, J.) dismissing plaintiffs-appellants' claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).
 
 
 1
 Today, we join our sister circuits in considering: (1) whether after the Supreme Court's decision in Seminole, Congress may abrogate the States' Eleventh Amendment sovereign immunity under the Interstate Commerce Clause; and (2) whether States waive their sovereign immunity by acting outside the sphere of state sovereignty. We find the answer to both is negative and, accordingly, affirm the district court, dismissing this action for lack of subject matter jurisdiction.
 
 BACKGROUND
 
 2
 Plaintiffs-appellants are 404 employees (the "Employees") of defendant-appellee State of New York ("New York" or the "State") who allege that the State failed to pay overtime compensation in violation of the Fair Labor Standards Act (the "FLSA"). 29 U.S.C. §§ 201-219 (1978).
 
 
 3
 In July 1994, the Employees commenced this action seeking recovery of unpaid overtime compensation, liquidated damages, and reasonable attorneys' fees from New York pursuant to the FLSA. 29 U.S.C. § 216(b). In February 1996, the Employees moved for partial summary judgment on the issue of liability and New York cross-moved for summary judgment in full, contending, inter alia, that the Eleventh Amendment guarantee of state sovereign immunity deprived the district court of jurisdiction.
 
 
 4
 The district court initially denied the State's cross-motion for sovereign immunity, holding that the State of New York violated the FLSA and is liable for overtime compensation to certain "qualifying" plaintiffs. See Close v. New York, No. 94-CV-0906, 1996 WL 67979 (N.D.N.Y. Feb. 13, 1996) ("Close I"). In denying the State's motion, the district court relied on Reich v. New York, 3 F.3d 581, 591 (2d Cir.1993) (finding that the clear language of the FLSA demonstrates Congress' intent to abrogate the States' sovereign immunity under the Statute). See Close I, 1996 WL 67979, at * 9.
 
 
 5
 However, in March 1996, while this case was pending, the Supreme Court issued its decision in Seminole Tribe v. Florida, 517 U.S. 609, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which explicitly overruled Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), and held that Congress lacked authority under the Indian Commerce Clause to abrogate the States' Eleventh Amendment immunity. In light of Seminole, the State again moved for dismissal on Eleventh Amendment grounds. The Employees opposed the motion contending that Seminole is not controlling law because the decision limited Congress' power only under the Indian Commerce Clause. Alternatively, they argued that even if Seminole controls, the State constructively waived its Eleventh Amendment sovereign immunity by acting outside the sphere of state sovereignty.
 
 
 6
 The district court soundly rejected the Employees' arguments and noted that Seminole "appears to stand for the proposition that the only way Congress can abrogate [S]tates' immunity is if the federal statute in question is passed pursuant to the Fourteenth Amendment--the only remaining recognized authority for such Congressional action." Close v. New York, No. 94-CV-0906, 1996 WL 481550, at * 2 (N.D.N.Y. Aug.19, 1996) ("Close II"). The district court found that Seminole eliminated Congress' power to abrogate under both the Interstate Commerce Clause and the Indian Commerce Clause stating:
 
 
 7
 it is because Seminole Tribe eliminated the Interstate Commerce Clause, and not just the Indian Commerce Clause, as authority for Congressional abrogation of [S]tates' immunity that the Supreme Court took the step of overruling Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).
 
 
 8
 Close II, 1996 WL 481550, at * 3 (emphasis added). The district court concluded that Seminole, not Reich, is the controlling authority in the Second Circuit. See Id.
 
 
 9
 In rejecting the constructive waiver argument, the district court found that the Employees relied on an "incredibly broad" definition of activities outside the sphere of state sovereignty--one that would encompass any "activity that [the State] does not control to the total exclusion of the federal government." Id. at * 4. Noting that a state's participation in an activity regulated at least in part by the federal government is not, standing alone, sufficient to establish consent to be sued in federal courts, the district court held that the State did not constructively waive its Eleventh Amendment immunity by hiring and paying state employees under the FLSA. Id.
 
 
 10
 On August 19, 1996, the district court granted the State's motion and dismissed the action for lack of subject matter jurisdiction.
 
 DISCUSSION
 
 11
 On appeal, the Employees contend that the decision in Seminole does not divest this Court of jurisdiction and that Reich remains the controlling precedent in this Circuit. Specifically, they maintain that even after Seminole, Congress retains the power to abrogate the States' Eleventh Amendment sovereign immunity under the FLSA. Alternatively, the Employees argue that New York constructively waived its Eleventh Amendment sovereign immunity. We disagree.
 
 Standard of Review
 
 12
 When reviewing a district court's determination of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), we review factual findings for clear error and legal conclusions de novo. See Wake v. United States, 89 F.3d 53, 57 (2d Cir.1996); Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 594 (2d Cir.1993).
 
 Eleventh Amendment Immunity
 The Eleventh Amendment provides:
 
 13
 [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 14
 U.S. Const. amend. XI. In addition, the Eleventh Amendment also implicitly protects an unconsenting state from suit by its own citizens. See Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974) ("[w]hile the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). This protection presupposes: (1) that each state is a sovereign entity in our federal system; and (2) that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. Seminole, at ----, 116 S.Ct. at 1122.
 
 
 15
 Eleventh Amendment immunity, however, is not absolute. When, as here, plaintiffs seek recovery only from the state, and not from its officials, there are two ways to divest a state of its Eleventh Amendment sovereign immunity and hale the state into federal court: (1) Congress may abrogate a state's sovereign immunity through a statutory enactment, see Fitzpatrick v. Bitzer, 427 U.S. 445, 452-56, 96 S.Ct. 2666, 2669-71, 49 L.Ed.2d 614 (1976); and (2) a state may waive its immunity and agree to be sued in federal court, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).
 
 Abrogation
 
 16
 Congress may not abrogate a state's sovereign immunity unless it: (1) "unequivocally expresse[s] its intent to abrogate the immunity"; and (2) acts "pursuant to a valid exercise of power." Seminole, at ----, 116 S.Ct. at 1123. The first prong is easily met when considering the FLSA. The language of the FLSA evinces a clear intent to abrogate the States' sovereign immunity by allowing suit in federal courts. The FLSA provides, in pertinent part, that:
 
 
 17
 [a]n action to recover the liability prescribed [unpaid minimum wages, unpaid overtime compensation, an additional equal amount as liquidated damages, employment, reinstatement, promotion, payment of wages lost, etc.] ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
 
 
 18
 29 U.S.C. § 216(b) (emphasis added). We find, however, that the FLSA fails to satisfy the second prong in light of Seminole.
 
 A) The Seminole Decision
 
 19
 In Seminole, the Seminole Tribe sued Florida in federal court under the Indian Gaming Regulatory Act ("IGRA")[1] which was passed pursuant to Congress' authority under the Indian Commerce Clause. U.S. Const. art. I, § 8, cl. 3. The IGRA contains a provision requiring a state and an Indian tribe to negotiate in good faith. The state's obligation may be enforced in "[t]he United States district courts." 25 U.S.C. § 2710(d)(7)(A). In reviewing this provision, the question before the Supreme Court was whether "the Eleventh Amendment prevent[s] Congress from authorizing suits by Indian tribes against States for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause." Seminole, at ----, 116 S.Ct. at 1122. Because Florida had not consented to be sued, the Supreme Court also asked whether "Congress through [the IGRA] abrogated the States' sovereign immunity." Id. at ----, 116 S.Ct. at 1123.
 
 
 20
 The Court found that the IGRA expressly intended to abrogate a state's sovereign immunity and next turned to the question of whether the IGRA was passed pursuant to a constitutional provision granting Congress the power to abrogate. In its analysis, the Court noted that such authority had been granted under only two provisions of the Constitution: (1) the Fourteenth Amendment, see Fitzpatrick, 427 U.S. at 454-55, 96 S.Ct. at 2670-71 (holding that Congress may abrogate the States' Eleventh Amendment sovereign immunity under § 5 of the Fourteenth Amendment because the Fourteenth Amendment, adopted well after the Eleventh Amendment and ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment); and (2) the Interstate Commerce Clause, see Union Gas, 491 U.S. at 23, 109 S.Ct. at 2286.
 
 
 21
 As the Fourteenth Amendment played no part in the Seminole decision, the Court focused on the Interstate Commerce Clause. The Court noted that "[i]f anything, the Indian Commerce Clause accomplishes a greater transfer of power from the States to the Federal Government than does the Interstate Commerce Clause," Seminole, at ----, 116 S.Ct. at 1126, and undertook a reexamination of Union Gas--the only Supreme Court case to uphold congressional abrogation of a state's sovereign immunity under the Interstate Commerce Clause.
 
 
 22
 A plurality of the Court in Union Gas believed that "the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce," 491 U.S. at 14, 109 S.Ct. at 2281, and reasoned that such power "would be incomplete without the authority to render States liable in damages ..." Id. at 19, 109 S.Ct. at 2284. In fact, the Court recognized carte blanche consent under the Interstate Commerce Clause opining that:
 
 
 23
 [t]he States held liable under such a congressional enactment are thus not "unconsenting"; they gave their consent all at once, in ratifying the Constitution containing the Commerce Clause, rather than on a case-by-case basis.
 
 
 24
 Id. at 20, 109 S.Ct. at 2284.
 
 
 25
 Seminole put an end to such seemingly unbridled congressional power concluding that Union Gas departed from established federalism jurisprudence in that it expanded the jurisdiction of the federal courts beyond the bounds of Article III. See Seminole, at ----, 116 S.Ct. at 1128; Union Gas, 491 U.S. at 39, 109 S.Ct. at 2301 (Scalia, J., dissenting)("[t]he 'constitutionally mandated balance of power' between the States and the Federal Government was adopted by the Framers to ensure the protection of 'our fundamental liberties.' By guaranteeing the sovereign immunity of the States against suit in federal court, the Eleventh Amendment serves to maintain this balance.") (citations omitted).
 
 
 26
 The Supreme Court explicitly overruled Union Gas and, by necessity, rejected claims with respect to the IGRA and found that the Seminole Tribe's suit against Florida was barred by the Eleventh Amendment. See Seminole, at ----, 116 S.Ct. at 1128. The Court concluded that:
 
 
 27
 the background principle of state sovereign immunity ... is not so ephemeral as to dissipate when the subject of the suit is an area ... that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.
 
 
 28
 Id at ----, 116 S.Ct. at 1131-32. (emphasis added) (footnote omitted).
 
 
 29
 By overruling Union Gas, the Supreme Court restored the balance of power between Congress and the Judiciary anticipated by the Framers in Article I and Article III of the Constitution and delineated the only permissible area of convergence: Congress may abrogate the States' Eleventh Amendment sovereign immunity by the power vested to it under § 5 of the Fourteenth Amendment. Id. at ----, 116 S.Ct. at 1128.
 
 B) The Reich Decision
 
 30
 A scant three years before Seminole, we held that the FLSA, enacted pursuant to Congress's powers under the Interstate Commerce Clause, abrogated the States' Eleventh Amendment sovereign immunity. See Reich, 3 F.3d at 590. In reaching this conclusion, we applied the test set forth in Atascadero, 473 U.S. at 242, 105 S.Ct. at 3147 ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute"), and concluded that "Congress has made its intent to abrogate the [S]tates' sovereign immunity abundantly clear in the language of the FLSA, as amended in 1974 and 1985." Reich, 3 F.3d at 590.
 
 
 31
 The Employees now urge this Court to follow Reich, not Seminole, in adjudicating congressional abrogation under the FLSA. They maintain, as did the plaintiffs in Union Gas and Reich, that Congress has the power to abrogate the States' Eleventh Amendment sovereign immunity under the Interstate Commerce Clause. However, the Supreme Court, in Seminole, explicitly rejected this argument when it overruled Union Gas and we are bound by Seminole.
 
 C) Seminole Is The Controlling Precedent
 
 32
 Generally, "[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." Seminole, at ----, 116 S.Ct. at 1129; see also County of Allegheny v. ACLU, 492 U.S. 573, 668, 109 S.Ct. 3086, 3140-41, 106 L.Ed.2d 472 (1989). In keeping with this policy, we rely on the rationale set forth in Seminole regarding the interrelationship between Article I and Article III powers and conclude that Seminole clearly prohibits congressional abrogation under the Indian Commerce Clause or the Interstate Commerce Clause. Indeed, Seminole makes it clear that none of the powers granted to Congress by the Constitution under Section 8 of Article I is potent enough to trump the protection provided to the States by the Eleventh Amendment. After Seminole, the only source of congressional abrogation stems from the Fourteenth Amendment. Because we came to a contrary conclusion in Reich, we now question its continued viability in this Circuit.
 
 
 33
 A decision of a panel of this Court is binding until it is overruled by the Court en banc or by the Supreme Court. See Jones v. Coughlin, 45 F.3d 677, 679 (2d Cir.1995); Wisdom v. Intrepid Sea-Air Space Museum, 993 F.2d 5, 7 (2d Cir.1993); United States v. Ianniello, 808 F.2d 184, 190 (2d Cir.1986). The Supreme Court has spoken. Seminole repaired the wall between Article I and Article III that had been eroded by Union Gas; and thereby dealt the knock-out punch to our reasoning in Reich. Accordingly, we can no longer justify congressional abrogation under the Interstate Commerce Clause, and to the extent that Reich permits such abrogation, we hold Reich is no longer good law.
 
 
 34
 Today, we join the long list of courts[2] that have concluded that, after Seminole, Congress cannot abrogate the States' Eleventh Amendment sovereign immunity pursuant to any Article I power. Accordingly, unless New York waived its immunity, the district court lacked subject matter jurisdiction because the FLSA abrogated New York's sovereign immunity under the Interstate Commerce Clause which is an improper exercise of authority under Seminole.
 
 Waiver
 
 35
 "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero, 473 U.S. at 241, 105 S.Ct. at 3146. Much like congressional abrogation, waiver of a State's Eleventh Amendment immunity will not be found unless such consent is "unequivocally expressed." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Because New York did not expressly waive its Eleventh Amendment sovereign immunity, we must determine whether New York's actions may be construed as a constructive waiver (constructive consent).
 
 
 36
 The doctrine of constructive consent is not "commonly associated with the surrender of constitutional rights" Edelman, 415 U.S. at 673, 94 S.Ct. at 1360, and we refuse to deny the States their Eleventh Amendment sovereign immunity unless: (1) Congress evinced a clear and unequivocal intent to hold the States liable in federal court; and then (2) a state voluntarily engaged in that particular activity. See Koehler v. Iowa College Student Aid Com'n, 204 B.R. 210, 217 (Bankr.D.Minn.1997). The activity at issue must be one in which the state realistically could choose not to participate. See Erwin Chemerinsky, Federal Jurisdiction § 7.6, at 410 (2d ed.1994).
 
 
 37
 As just discussed, it is undisputed that in enacting the FLSA Congress clearly intended to hold the States liable in federal court; and the Employees contend that because the State acted outside the sphere of state sovereignty [by being an employer], it consented to be sued in federal court. They point out that because Congress did not violate the Tenth Amendment when it made the FLSA applicable to the States, see Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 554-56, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), it follows that the FLSA regulates outside the state's sphere of sovereignty so that a state is not entitled to sovereign immunity. This argument not only ignores the criteria for constructive consent, but misunderstands and impermissibly combines the Tenth and Eleventh Amendments.
 
 
 38
 While both Amendments protect the States, they deal with different aspects of state sovereignty. The Tenth Amendment protects States from intrusion by the federal government.[3] It addresses state sovereignty generally and limits Congress' exercise of power pursuant to Article I. See New York v. United States, 505 U.S. 144, 188, 112 S.Ct. 2408, 2434-35, 120 L.Ed.2d 120 (1992) (holding that Congress cannot compel States to provide for disposal of radioactive waste within their borders); Gregory v. Ashcroft, 501 U.S. 452, 463, 473, 111 S.Ct. 2395, 2402, 2407-08, 115 L.Ed.2d 410 (1991) (holding that authority to determine qualifications of state-court judges is reserved to the States under the Tenth Amendment and is not subject to Congress' abrogation of state mandatory-retirement provisions through ADEA); Garcia, 469 U.S. at 554-57, 105 S.Ct. at 1019-21 (Tenth Amendment does not preclude application of FLSA substantive minimum wages and overtime requirements to state and local public employers) (reversing National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)).
 
 
 39
 The Eleventh Amendment protects States from suits by its citizens in federal court. It is concerned with judicial authority and limits the power of Article III courts over actions brought against States. See Reich, 3 F.3d at 590.
 
 
 40
 The Employees rely on Parden v. Terminal Ry. of Alabama State Docks Dep't, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), an Eleventh Amendment case, to find constructive consent in this case. In Parden, petitioners sued Alabama under the Federal Employers' Liability Act ("FELA"). The Court found that Congress enacted FELA in its exercise of power under the Interstate Commerce Clause and that by enacting it, Congress had conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court. But this finding did not eradicate the States' sovereign immunity.
 
 
 41
 Recognition of the congressional power to render a State suable under the FELA does not mean that the immunity doctrine, as embodied in the Eleventh Amendment ... is here being overridden. It remains the law that a State may not be sued by an individual without its consent.
 
 
 42
 Id. at 192, 84 S.Ct. at 1213 (emphasis added).
 
 
 43
 The Parden court found such consent, holding that Alabama acted outside its sphere of sovereignty and consented to suit in federal court, when it began operating an interstate railroad twenty years after the enactment of FELA.[4] Extending the reasoning in Parden to this case, the Employees assert, based on Garcia, a Tenth Amendment case, that because the FLSA regulates outside a state's sphere of sovereignty, it affords no sovereign immunity. We disagree for several reasons.
 
 
 44
 First, Congress may exercise power over the States without affecting Eleventh Amendment immunity. See Seminole, at ---- n. 14, 116 S.Ct. at 1131 n. 14. There is a distinction between surrenders of state sovereign immunity and state sovereignty under the FLSA. See Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 280 n. 1, 93 S.Ct. 1614, 1616 n. 1, 36 L.Ed.2d 251 (1973) (FLSA did not, under Parden, provide waiver of sovereign immunity--rejecting notion expressed in Justice Brennan's dissent that "States surrendered their sovereignty ... when they granted Congress the power to regulate commerce").
 
 
 45
 Second, the very premise that a congressional exercise of power permissible under the Tenth Amendment would negate the Eleventh Amendment is untenable. Such reasoning would offer Eleventh Amendment protection only for those activities exclusively regulated by the States. Moreover, if we were to recognize constructive consent every time a State acted in a field regulated by Congress, we would vitiate the very premise upon which Seminole was decided.
 
 
 46
 At bottom, then, to acknowledge that the Federal Government can make the waiver of state sovereign immunity a condition to the State's action in a field that Congress has authority to regulate is substantially the same as acknowledging that the Federal Government can eliminate state sovereign immunity in the exercise of its Article I powers--that is, to adopt the very principle I have just rejected.... If state sovereign immunity has any reality, it must mean more than this.
 
 
 47
 Union Gas, 491 U.S. at 44, 109 S.Ct. at 2304 (Scalia, J., dissenting) (footnote omitted).
 
 
 48
 Third, the Employees' constructive consent argument and reliance on Parden is not only inconsistent with the holding in Seminole, but is inapplicable with respect to the FLSA. In Parden, Alabama could be deemed to waive immunity because it began operating a railroad 20 years after the enactment of FELA. In this case, however, the FLSA deals with employee rights, not economic endeavors. Moreover, given that New York had employees before the enactment of the FLSA and before it was made applicable to the States,[5] its continued status as an employer cannot realistically be construed as a waiver of immunity.
 
 
 49
 Finally, Parden 's viability, in light of Seminole is precarious. If Congress no longer has the power to abrogate state sovereign immunity under Article I, constructive consent should not become a shunt to Article III bypassing the mandate of the Supreme Court. Accordingly, we find that New York did not waive its Eleventh Amendment sovereign immunity either expressly or constructively by regulating employer-employee relationships under the FLSA.
 
 CONCLUSION
 
 50
 Based on the foregoing, we affirm the judgment of the district court.
 
 
 
 [1]
 IGRA describes the process by which a state and an Indian tribe undertake negotiations towards a Tribal-State Compact governing the operation of gaming by the tribe
 
 
 [2]
 See Aaron v. Kansas, 115 F.3d 813, 818 (10th Cir.1997); Moad v. Arkansas State Police Dep't, 111 F.3d 585, 587 (8th Cir.1997); Wilson-Jones v. Caviness, 99 F.3d 203, 211 (6th Cir.1996); Whalen v. Arizona, 962 F.Supp. 1218, 1221 (D.Ariz.1997); Palotai v. Univ. of Maryland College Park, 959 F.Supp. 714, 718 (D.Md.1997); Digiore v. Illinois, 962 F.Supp. 1064, 1073-74 (N.D.Ill.1997); Bergemann v. Rhode Island, 958 F.Supp. 61, 64 (D.R.I.1997); Biddlecome v. Univ. of Tex., No. CIV.A. 96-1872, 1997 WL 124220, at * 4-5 (S.D.Tex. Mar.13, 1997); Frazier v. Courter, 958 F.Supp. 252, 253-54 (W.D.Va.1997); Adams v. Kansas, 934 F.Supp. 371, 372 (D.Kan.1996); Blow v. Kansas, 929 F.Supp. 1400, 1402 (D.Kan.1996); Taylor v. Com. of Virginia, 951 F.Supp., 591, 601 (E.D.Va.1996); Raper v. Iowa, 940 F.Supp. 1421, 1426 (S.D.Iowa 1996); Rehberg v. Dep't of Pub. Safety, 946 F.Supp. 741, 743 (S.D.Iowa 1996); American Federation of State, County and Mun. Employees v. Com. of Virginia, 949 F.Supp. 438, 442 (W.D.Va.1996); Mills v. Maine, No. CIV. 92-410-P-H, 1996 WL 400510, at * 1 (D.Me. July 3, 1996) (unpublished order); Chauvin v. Louisiana, 937 F.Supp. 567, 570 (E.D.La.1996)
 
 
 [3]
 "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X
 
 
 [4]
 In 1987, the Supreme Court explicitly overruled Parden to the extent that it "is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language." Welch v. Texas Dep't of Highways & Pub. Transp., 483 U.S. 468, 478, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987). Four years later, the Supreme court declined to overrule Parden in its entirety. Parden was overruled only as to its holding that FELA constituted a waiver of the Eleventh Amendment. The Court then reaffirmed the portion of Parden that interpretted FELA to permit suits against states in state courts. See Hilton v. South Carolina Pub. Railways Com'n, 502 U.S. 197, 199-207, 112 S.Ct. 560, 562-67, 116 L.Ed.2d 560 (1991)
 
 
 [5]
 The FLSA was enacted in 1938 and made applicable to the States in 1966. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)