Joseph C. KILCULLEN,
Plaintiff–Appellant,

v.

NEW YORK STATE DEPARTMENT
OF LABOR, Defendant–
Appellee,

United States of America, Intervenor.

Docket No. 99–7208

United States Court of Appeals,
Second Circuit.

Argued: Oct. 18, 1999.

Decided: Feb. 24, 2000.

Joseph Hein, Altamont, NY, for Plaintiff–Appellant,

Andrea Oser, Assistant Attorney General, New York State, Albany, N.Y. (Eliot Spitzer, Attorney General, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General on the brief), for Defendant–Appellee.

Seth M. Galanter, Department of Justice, Washington, DC (Bill Lann Lee, Acting Assistant Attorney General and Jessica Dunsay Silver on the brief), for Intervenor.

Before: KEARSE, LEVAL, and CABRANES, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff appeals from a decision of the United States District Court for the Northern District of New York (Lawrence E. Kahn, Judge) dismissing for lack of subject matter jurisdiction a lawsuit he had filed against the New York State Department of Labor seeking damages under the ADA, 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). In reaching its decision, the district court held that States are immune from suits for damages in federal court under both statutes and that Congress lacked the power, pursuant to Section 5 of the Fourteenth Amendment, to abrogate the States' immunity from suit under these laws. Subsequent to that decision, this court held in *Muller v. Costello*, 187 F.3d 298, 307–11 (2d Cir.1999), that Congress had successfully abrogated the States' sovereign immunity from suit under the ADA through a valid exercise of its Fourteenth Amendment enforcement powers. Because *Muller*'s logic applies with equal force to Section 504 of the Rehabilitation Act, we hold that the immunity of States is abrogated under that Act as well.

## BACKGROUND

Plaintiff Joseph Kilcullen suffers from epilepsy and a learning disability. Since 1995, he has actively sought employment with various New York State agencies. In each of his applications for state employment, Kilcullen has been asked to describe any handicaps or medical problems he might have. Between September 1995 and February 1996, he was employed, on probationary status, as a Highway Maintenance Trainee by the New York State Department of Transportation. After he was involved in a series of snow plow accidents, he was discharged from that position.

Kilcullen subsequently filed two lawsuits against New York State, both alleging that he was discriminated against on the basis of his disability. One action, *Kilcullen v. New York State Department of Transportation*, 96–CV–2023 (N.D.N.Y.), challenged his discharge under the ADA and the New York Human Rights Law (N.Y.HRL), N.Y. Exec. Law §§ 290, et seq. The other, *Kilcullen v. New York State Department of Labor*, 97–CV–484 (N.D.N.Y.), alleged that the questions regarding disability on the State's employment application forms violated the ADA, the NYHRL, and Section 504 of the Rehabilitation Act.

By opinions dated January 19, 1999, the district court dismissed both actions on the ground that the Eleventh Amendment bars federal courts from considering claims against the States under the provisions in question. *See Kilcullen v. New York State Dep't of Transp.*, 33 F.Supp.2d 133 (N.D.N.Y.1999), *vacatur noted*, 2000 WL 64909 (N.D.N.Y. Jan. 12, 2000); *Kilcullen v. New York State Dep't of Labor*, 97–CV–484 (N.D.N.Y. Jan. 19, 1999). The plaintiff appealed both decisions. By order dated January 5, 2000, we vacated the district court's decision in the first action-which did not include a claim under the Rehabilitation Act-and remanded the case to the district court. *See Kilcullen v. New York State Dep't of Transp.*, 2000 WL 64909 (N.D.N.Y. Jan. 12, 2000) (noting remand). This is the appeal of the second decision.

## DISCUSSION

Kilcullen argues that the district court erred in finding that the Eleventh Amendment bars claims against State agencies under the ADA and Section 504 of the Rehabilitation Act. In light of this court's decision in *Muller*, 187 F.3d 298, defendant New York State Department of Labor (New York) concedes that Kilcullen's ADA claim must be reinstated and remanded to the district court for disposition on the merits. However, New York argues that, despite the substantial con-

gruence between the ADA and the Rehabilitation Act,[1] differences in the legislative record preclude a finding that Congress has abrogated the States' immunity from suit under Section 504 of the Rehabilitation Act. We reject the defendant's analysis and hold that State agencies are not immune from suit in federal court to enforce the rights guaranteed in Section 504 of the Rehabilitation Act.

■ Though the text of the Eleventh Amendment does not expressly provide the States immunity from suit in federal court by their own citizens,[2] the Supreme Court has long interpreted the Constitution to establish such a barrier. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana*, 134 U.S. 1, 16–19, 10 S.Ct. 504, 33 L.Ed. 842 (1890). However, this immunity is not absolute, but subject to two important limitations: (1) a State may waive its immunity and consent to be sued in federal court, *see, e.g., Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Close v. New York*, 125 F.3d 31, 36 (2d Cir.1997), and (2) Congress may abrogate the States' sovereign immunity by passing legislation pursuant to a valid exercise of its power to enforce the rights guaranteed by the Fourteenth Amendment, *see, e.g., Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114; *Close*, 125 F.3d at 36.

In *Seminole Tribe*, the Supreme Court set forth a two-part test for determining whether an act of Congress validly abrogates States' sovereign immunity: Congress must (1) "unequivocally express[ ] its intent to abrogate the immunity," 517 U.S. at 55, 116 S.Ct. 1114 (internal quotation marks omitted) and (2) act "pursuant to a constitutional provision granting [it] the power to abrogate," *id.* at 59, 116 S.Ct. 1114. As to the second prong, recent Supreme Court precedent has clarified that Congress may not abrogate State sovereign immunity pursuant to its Article I powers, although it may pursuant to § 5 of the Fourteenth Amendment.[3] *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, U.S.*, 527 U.S. 627, 119 S.Ct. 2199, 2205, 144 L.Ed.2d 575 (1999); *see also Muller*, 187 F.3d at 308.

New York concedes that the first condition is met. The relevant enactment unequivocally states: "State[s] shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d–7(a)(1). Further, the language of this provision is, with one minor difference not relevant to this case, identical to the provision we found to be unequivocal in *Muller. See Muller*, 187 F.3d at 307.

New York argues, however, that the second *Seminole Tribe* requirement is not met, as Congress was not acting pursuant to a valid exercise of its § 5 enforcement powers when it adopted the Rehabilitation Act. In its initial brief, the State premised its argument on the substance of the Act, insisting that the statute proscribes conduct not prohibited by the Fourteenth Amendment and demands remedies nei-

---

1. The Rehabilitation Act, adopted in 1973, prohibits "any program or activity receiving Federal financial assistance" from discriminating against people with disabilities. 29 U.S.C. § 794(a). The ADA, adopted in 1992, is broader in scope, reaching individuals and entities that do not receive federal funds. *See generally* 42 U.S.C. §§ 12101, et seq. While the statutes are not absolutely congruent in their other requirements, they impose identical obligations upon employers. *See* 29 U.S.C. § 794(d); *Lincoln Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir.1998).

2. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

3. Section 5 of the Fourteenth Amendment states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5.

ther proportionate to nor congruent with the Equal Protection Clause's command.[4] After this court issued its opinion in *Muller* expressly rejecting these arguments, *see Muller,* 187 F.3d at 308–11, the defendant altered its tack. New York now argues that Congress's abrogation was invalid because it had not yet developed a sufficient legislative record demonstrating that the Rehabilitation Act was "appropriate legislation" to enforce the Fourteenth Amendment when it adopted the abrogation provision in 1986.[5]

■ We reject New York's analysis, and conclude that we are free to consider the ADA's subsequently accumulated legislative record when assessing whether the Rehabilitation Act constitutes appropriate remedial legislation.[6] For the purposes of determining whether a statute represents a valid exercise of a delegated power, the relevant inquiry is whether Congress "could have" enacted the statute pursuant to the power. *E.g., Anderson v. State Univ. of New York,* 169 F.3d 117, 120 (2d Cir.1999), *vacated on other grounds,* —— U.S. ——, 120 S.Ct. 929, 145 L.Ed.2d 807 (2000). In making this determination, courts have always been free to consider evidence beyond that which is contained in the legislative record. *See, e.g., Turner Broad. Sys., Inc. v. FCC,* 520 U.S. 180, 200, 209, 211–12, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997) (while inquiring into constitutionality of a statute, repeatedly considering information submitted after the law was enacted and critiquing as "constitutionally unwarranted" position that Congress is under obligation to devel-

op detailed factual record "to accommodate judicial review"); *cf. Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,* 981 F.2d 50, 60 (2d Cir.1992) ("The law is plain that the constitutional sufficiency of a state's proffered reasons necessitating an affirmative action plan should be assessed on whatever evidence is presented, whether prior to or subsequent to the program's enactment."). Nothing in the Supreme Court's recent Eleventh Amendment jurisprudence casts doubt on this fundamental adjudicative principle. Indeed, the Court has explicitly stated that it has no such intention. *See Florida Prepaid,* 119 S.Ct. at 2210 (noting that "the lack of support in the legislative record is not determinative" on the question of the validity of a statute's purported abrogation of State sovereign immunity); *Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 649, 145 L.Ed.2d 522 (2000) (same). While the Court has relied heavily on legislative history for guidance in determining whether legislation allegedly enacted pursuant to § 5 would actually serve to enforce the Fourteenth Amendment's guarantees, the Court has never established a procedural requirement that Congress document in detail its reasons for adopting the statute.

An examination of the two most recent Eleventh Amendment cases in which the Court explored the legislative history is instructive. In *Kimel,* for instance, the Court first examined the text of the Age Discrimination in Employment Act (ADEA) and determined that, on its face, the statute appeared to reach primarily

---

**4.** In its initial brief, New York conceded, contrary to the position it now advances, that "the issue of Congressional abrogation is essentially the same" for the two statutes. Because New York bases its change of position on cases decided after its brief was filed, we address its claim on the merits.

**5.** The record we relied on in *Muller* was developed during the two years preceding the adoption of the ADA in 1992.

**6.** Because we hold that courts may look beyond the information in the legislative record in assessing whether a statute is a valid exer-

cise of Congress's § 5 powers, we need not decide whether the Rehabilitation Act's legislative record is sufficient to establish the validity of the abrogation on its own terms. Nor need we decide if Congress's 1994 amendment of the Rehabilitation Act so as to better conform the statute to the ADA (which included the adoption of a provision explicitly establishing identical standards for determining violations of the statutes' employment provisions, *see* 29 U.S.C. § 794(d)) effectively incorporated the ADA's legislative history into the Rehabilitation Act's record.

conduct unregulated by the Fourteenth Amendment. *See id.* at 645–48. Noting that such a conclusion is not necessarily determinative, the Court then phrased the next step of its inquiry as follows:

> That the ADEA prohibits very little conduct likely to be held unconstitutional, while significant, does not alone provide the answer to our § 5 inquiry. Difficult and intractable problems often require powerful remedies, and we have never held that § 5 precludes Congress from enacting reasonably prophylactic legislation. Our task is to determine whether the ADEA is in fact just such an appropriate remedy or, instead, merely an attempt to substantively redefine the States' legal obligations with respect to age discrimination. *One means* by which we have made such a determination in the past is by examining the legislative record containing the reasons for Congress' action.

*Id.* at 648 (emphasis added). The court proceeded to examine the record for evidence suggesting that the ADEA was a "powerful remed[y]" for a "[d]ifficult and intractable problem." *Id.* at 648–49. As the above quote makes clear, however, such an examination is but one method of validating Congress's authority. The ultimate question remains not whether Congress created a sufficient legislative record, but rather whether, given all of the information before the Court, it appears that the statute in question can appropriately be characterized as legitimate remedial legislation. Examining the legislative record Congress compiled in its hearings on the ADA, this court has already determined that the substance of these twin statutes can be so characterized. *See Muller,* 187 F.3d at 308–11. New York's protestations notwithstanding, that decision is controlling here.

New York's reliance on *Florida Prepaid* is similarly misplaced. In *Florida Prepaid,* 119 S.Ct. 2199, the issue was the validity of the Patent Remedy Act, a Congressional statute purportedly abrogating States' immunity from suits for patent infringement. According to the Act's defenders, the statute was valid § 5 legislation because it sought to protect patent holders from state actions depriving them of their property without due process of law. *See id.* at 2205, 2208. In order to determine whether the Act was legitimately concerned with potential due process violations or whether in substance it was merely part of the general regulatory scheme Congress had adopted under its Article I powers to establish a uniform system of patent and copyright laws, *see* U.S. Const. Art. I, § 8, cl. 8, the Court explored two factual questions: (1) whether there existed individuals whose patent rights the States were intentionally infringing, and (2) whether a substantial number of these individuals lacked legal recourse. *See id.* at 2207–08. The Court expressed profound skepticism about these propositions, but nonetheless explored the available evidence, including in particular the lengthy legislative history, looking for reports of such problems. *See id.* at 2207–11. As in *Kimel,* the Court did not focus its attention on the legislative record out of any principled aversion to other forms of evidence, but for lack of other supporting data. *Cf. id.* at 2210–11 (phrasing inquiry as whether "[t]he historical record and the scope of coverage" allow the conclusion that the legislation was remedial); *id.* at 2207 (noting that the propriety of Fourteenth Amendment remedial legislation must be "judged with reference to the historical experience ... it reflects" (quoting *City of Boerne v. Flores,* 521 U.S. 507, 525, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997))). Indeed, the Supreme Court itself cited to data outside the Congressional record in analyzing whether a pattern of constitutional abuses existed sufficient to allow Congress to adopt the Patent Remedy Act as remedial legislation. *See id.* at 2207 (citing to Federal Circuit's compilation of patent-infringement suits against the States).

While there is considerable dispute among our sister circuits as to whether Congress validly abrogated the States' sovereign immunity in adopting the ADA and Section 504 of the Rehabilitation Act,

no court has adopted the distinction between the ADA and the Rehabilitation Act that New York ask us to embrace here.[7] We likewise decline to do so. As Congress included identical unequivocal abrogation provisions in the ADA and the Rehabilitation Act, and as the ADA and Section 504 of the Rehabilitation Act impose identical obligations upon employers, the validity of abrogation under the twin statutes presents a single question for judicial review. We decided that question in *Muller.* Following that decision, we hold that Congress has validly abrogated the States' immunity from suit under both the ADA and Section 504 of the Rehabilitation Act.

The plaintiff also argues that New York State has waived its immunity and consented to suit under the Rehabilitation Act by virtue of its acceptance of federal funds As we find that Congress validly abrogated the States' immunity from suit under Section 504 of the Rehabilitation Act, we need not reach that question. We note, however, that several other courts have found that receipt of federal funds constitutes a waiver under the Rehabilitation Act. *See, e.g., Clark v. California,* 123 F.3d 1267, 1271 (9th Cir.1997).

## CONCLUSION

For the reasons stated above, we VACATE the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

---

**7.** The Fifth, Seventh, Ninth, and Eleventh Circuits have all held that Congress validly abrogated State immunity under both the ADA and the Rehabilitation Act. *See, e.g., Garrett v. University of Alabama at Birmingham Bd. of Trustees,* 193 F.3d 1214, 1218 (11th Cir.1999) (applying circuit's prior decision on ADA to Rehabilitation Act); *Coolbaugh v. Louisiana,* 136 F.3d 430, 438 (5th Cir.1998) (holding that Congress validly abrogated immunity under the ADA and indicating that analysis is identical for Rehabilitation Act); *Clark v. California,* 123 F.3d 1267, 1270 (9th Cir.1997) (holding abrogation valid for both ADA and Rehabilitation Act); *Crawford v. Indiana Dep't of Corrections,* 115 F.3d 481, 487 (7th Cir. 1997) (holding abrogation valid for both ADA and Rehabilitation Act). Though the state of the law in the Eighth Circuit is not entirely clear, that court appears to have rejected abrogation under both the ADA and Section 504. *See, e.g., Bradley v. Arkansas Dep't of Educ.,* 189 F.3d 745, 755–56 (8th Cir.) (rejecting abrogation and waiver theories as to Rehabilitation Act), *rehearing en banc granted in part, opinion vacated in part sub. nom. Jim C. v. Arkansas Dep't of Educ.,* 197 F.3d 958 (8th Cir.1999) (granting rehearing en banc on waiver issue but leaving in place invalidation of abrogation); *DeBose v. Nebraska,* 186 F.3d 1087, 1088 (8th Cir.1999) (rejecting abrogation under the ADA). The Fourth Circuit has recently granted en banc review in a case raising the validity of Congress's abrogation for suits under both statutes. *See Amos v. Maryland Dep't of Pub. Safety and Correctional Servs.,* 178 F.3d 212 (4th Cir.), *rehearing en banc granted, judgment vacated,* (Dec. 28, 1999); *see also Brown v. North Carolina Div. of Motor Vehicles,* 166 F.3d 698, 705 (4th Cir.1999) (holding abrogation invalid in case involving regulation promulgated under a different provision of the ADA).