Patricia A. PUGLIESE, an individual, Plaintiff,

v.

**ARIZONA DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendant.**

**No. CIV–95–0928 PHX MHM.**

United States District Court, D. Arizona.

June 15, 2001.

Patricia Ann Kirtley, Kirtley Wells PC, Rosval Ardis Patterson, Patterson & Assoc. PC, Phoenix, AZ, for Plaintiff.

Loretta Jean Jones, Office of the Atty. Gen., Phoenix, AZ, for Defendant.

## MEMORANDUM DECISION AND ORDER

MURGNIA, District Judge.

### I. BACKGROUND

On November 17, 1999, the United States Court of Appeals for the Ninth Circuit in an unpublished memorandum decision reversed in part this Court's grant of summary judgment to the Defendant. In its opinion, the Ninth Circuit held that this Court erred in ruling that Plaintiff's October, 1995 refusal of a reasonable accommodation retroactively extinguished any claim Plaintiff might have had for damages pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA) and the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (RA). Accordingly, this matter was remanded back to this Court for a resolution of Plaintiff's remaining ADA and RA claims. However, prior to resolution of Plaintiff's remaining claims the United States Supreme Court issued its opinion in *Board of Trustees of the University of Alabama v. Garrett, et al.*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), in which it held that suits in federal court by state employees to recover money damages under the ADA are barred by the Eleventh Amendment.[1] As a result of *Garrett*, Plaintiff and Defendant entered into a stipulation dismissing Plaintiff's remaining ADA claim. However, this stipulation did not conclude the matter, since Plaintiff asserted that, despite the ruling in *Garrett*, she could still

---

1. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal Court." *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)

properly pursue money damages in this court under the RA. However, after reviewing the parties' briefs and hearing the parties' oral argument, it is clear that this court no longer has subject matter jurisdiction over Plaintiff's remaining claims..

## II. STANDARD OF REVIEW

■■ Federal courts are courts of limited jurisdiction. Lack of subject matter jurisdiction may be raised at any time and by any party. *See, American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16–18, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Attorneys Trust v. Videotape Computer Prods., Inc.,* 93 F.3d 593, 594–95 (9th Cir.1996). Further, a district court may *sua sponte* raise the issue of lack of subject matter jurisdiction and dismiss the insufficiently pled action. Fed.R.Civ.P. 12(h)(3); *See, In re Disciplinary Action Against Mooney,* 841 F.2d 1003, 1006 (9th Cir.1988).

## III. SUBJECT MATTER JURISDICTION UNDER THE REHABILITATION ACT OF 1973

After the Supreme Court handed down its decision in *Garrett,* this Court asked the parties to file trial memoranda regarding the *Garrett* decision's effect on the Plaintiff's RA claim. It is Plaintiff's position that the decision in *Garrett* effects only her voluntarily dismissed ADA claim. For support Plaintiff relies on two main arguments. First, Plaintiff asserts that because the Supreme Court failed to include the RA in its *Garrett* decision, prior decisions of the Ninth Circuit holding that Congress properly abrogated the State's Eleventh Amendment immunity still control. *See, Clark v. California,* 123 F.3d 1267 (9th Cir.1997), *cert denied,* 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 711

(1998). Additionally, Plaintiff contends that the state has voluntarily waived its Eleventh Amendment immunity by accepting federal funds as defined in the RA.[2] Conversely, Defendant asserts that *Garrett* establishes that Congress has not validly abrogated the States' Eleventh Amendment immunity against suits brought under the RA, and that it has in no way waived that immunity. After an analysis of the relevant facts and precedents, it appears that the State is correct, and this matter must be dismissed for lack of subject matter jurisdiction.

### A. Abrogation of Eleventh Amendment Immunity

■ "In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity'; and second, whether Congress has acted 'pursuant to a valid exercise of power'." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996)(internal citations omitted). Thus, the first question this Court must answer is whether or not the language of the RA evidences a clear intent to abrogate the State's Eleventh Amendment immunity. 42 U.S.C. § 2000d–7(a)(1) states that:

> "A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in federal court for a violation of section 504 of the Rehabilitation Act ... or the provisions of any other federal statute prohibiting discrimination by recipients of Federal financial assistance."

2. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

This provision, which was enacted in direct response to the Supreme Court's opinion in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), amounts to such an unequivocal expression of abrogation. *Lane v. Pena,* 518 U.S. 187, 200, 116 S.Ct. 2092, 2100, 135 L.Ed.2d 486 (1996)("... Congress responded to our decision in Atascadero by crafting an unambiguous waiver of the States' Eleventh Amendment immunity...").

▮ Having found such a clear expression, this Court must next determine if Congress has acted pursuant to a valid exercise of power. Both the Supreme Court and the Ninth Circuit have held that the RA, and significantly the ADA, were enacted under section 5 of the Fourteenth Amendment.[3] *Clark,* 123 F.3d at 1271. "Congress power to pass legislation under the Fourteenth Amendment is very broad. As the Supreme Court explained:

> Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment."

*Clark,* 123 F.3d at 1270, *quoting Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–24, 16 L.Ed.2d 828 (1966). However, recently, the Supreme Court has begun to take a much narrower view of the powers of Congress under § 5. *Board of Trustees of the University of Alabama,* 121 S.Ct. at 974 (Breyer, J., dissenting)("The Court's harsh review of Congress' use of its § 5 power is reminiscent of the similar limitation it once imposed upon Congress Commerce Clause power"). Today, in order for Congress to act prop-

erly pursuant to § 5, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. P.F. Flores,* 521 U.S. 507, 520, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997). In making the determination if the requisite nexus exists courts typically begin by looking to the Congressional record. *Id. See also, Board of Trustees of the University of Alabama,* 121 S.Ct. at 968 (Kennedy, J., concurring)("The predicate for money damages against an unconsenting State in suits brought by private persons must be a federal statute enacted upon the documentation of patterns of constitutional violations committed by the State in its official capacity."). However, in the current matter the Court need not undertake such an exercise.

In *Garrett* the Supreme Court held that "the legislative record of the ADA ... simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Board of Trustees of the University of Alabama,* 121 S.Ct. at 964.[4] Based on this "lack" of evidence the Supreme Court held that Congress was acting outside the scope of its powers when it enacted the ADA, and thus Congress did not properly abrogate the States' Eleventh Amendment immunity. *Board of Trustees of the University of Alabama,* 121 S.Ct. at 974. Although this determination was based on the ADA's congressional record, it must also apply to the RA.

▮ The ADA and the RA are congruent statutes in purpose and application. *Clark,* 123 F.3d at 1270, *and Kilcullen v.*

---

3. "Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 (of the Fourteenth Amendment) by enacting 'appropriate legislation.'" *Board of Trustees of the University of Alabama,* 121 S.Ct. at 963.

4. The Court made such a finding despite the evidence catalogued in a set of appendices by Justice Breyer.

*New York State Department of Labor,* 205 F.3d 77, 82 (2nd Cir.2000). The statutes are so nearly identical that every court that has considered the question has found that "the validity of abrogation under the twin statutes presents a single question for judicial review." *Kilcullen,* 205 F.3d, at 81 *Id. See also, Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 n. 3 (9th Cir.1995). One of the only differences between the RA and the ADA lies in their respective Congressional records, in that the RA's record is *significantly* smaller and contains substantially less evidence and fewer findings than the ADA's record [5]. *Id.* Accordingly, as the Supreme Court has held that the extensive record assembled by Congress prior to the enactment of the ADA fails to evidence a sufficient pattern of discrimination by the States, this Court is forced to conclude that the less complete RA record also fails to evidence a sufficient pattern of discrimination. Without such a pattern of discrimination, as *Garrett* makes clear, Congress' attempt to abrogate the States' Eleventh Amendment was not done pursuant to a proper exercise of its power, and was thus ineffective.[6]

### B. Waiver of Eleventh Amendment Immunity

Alternatively, Plaintiff asserts that Defendant, by accepting federal assistance funds, has agreed to waive its Eleventh Amendment immunity, and accept being sued in federal court. For support, Plaintiff points to the Ninth Circuit's 1997 ruling in *Clark v. California, supra,* in which the Circuit held that the "Rehabilitation Act manifests a clear intent to condition a state's participation on its consent to waive its Eleventh Amendment immunity." *Clark,* 123 F.3d, at 1271. However, as the waiver described by the Ninth Circuit is an implied or constructive waiver, the Supreme Court's subsequent decision in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), has necessitated that this Court re-visit the waiver issue.

"The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3142. However, in *Parden v. Terminal R. of Alabama Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the Supreme Court held that a State impliedly or constructively waives its Eleventh Amendment immunity when it participates in an activity to which Congress has attached waiver of immunity as a precondition. Thus, as "...Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the [FELA]; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit." *Parden,* 377 U.S., at 192, 84 S.Ct. at 1213. However, shortly after this decision the Supreme Court "began to retreat from Parden." *College Savings Bank,* 527 U.S. at 677, 119 S.Ct. at

---

**5.** In *Kilcullen v New York State Department of Labor, supra,* the State of New York asserted that, while the ADA properly abrogated its sovereign immunity, the RA, because of its insufficient record, did not. The 2nd Circuit rejected this argument, but only *after* incorporating the ADA's findings into its evaluation of the RA's Congressional record.

**6.** In *Clark v. California, supra,* the 9th Circuit held that the ADA and RA were validly enact-

ed under the Fourteenth Amendment, because "Congress explicitly found that persons with disabilities have suffered discrimination." *Clark,* 123 F.3d, at 1270. However, as the decision in *Garrett* expressly holds that Congress' evidence of discrimination was insufficient, the *Clark* Court's finding that Congress properly abrogated the State's Eleventh Amendment immunity is no longer binding.

2227. This "retreat" culminated in the *College Savings Bank* decision in which the Supreme Court expressly overruled *Parden*, and eliminated the possibility of a constructive or implied waiver of Eleventh Amendment immunity. *Id* ("We think the constructive-waiver experiment of *Parden* was ill conceived, and see no merit in attempting to salvage any remnant of it... Whatever may remain of our decision in *Parden* is expressly overruled."). The Court did so, in part, because Eleventh Amendment immunity is a constitutionally protected right, that deserves no less protection than other constitutionally protected privileges. *College Savings Bank*, 527 U.S. at 681–682, 119 S.Ct. at 2229 ("State sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected.").

■ Today, a State will be seen to have waived its Eleventh Amendment immunity only "if the State voluntarily invokes [the federal court's] jurisdiction, or else if the State makes a 'clear declaration' that it intends to submit itself to" the federal court's jurisdiction. *College Savings Bank*, 527 U.S. at 676, 119 S.Ct. at 2225 (internal citations omitted). In the matter at hand the State, as a defendant who has brought no counter-claim or third party action, has not voluntarily invoked the jurisdiction of this Court. Therefore, unless the State has made a "clear declaration" that it will submit itself to this Court's jurisdiction, the State has not have waived its Eleventh Amendment immunity in this matter.

■ Plaintiff correctly asserts that Congress, through its power under the Spending Clause [7], may condition the acceptance of federal funding upon the State's consent to suit by private citizens in federal court. Plaintiff, citing the text of the RA, and the Supreme Court's decision in *College Savings Bank, Id.*, and *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), then points out that over half of the State's mental health budget, more than two hundred million dollars in the fiscal year 1994–1995, came from the federal government. Accordingly, Plaintiff argues, as the State has accepted funding, which Congress through the RA has conditioned on the State's waiver of Eleventh Amendment immunity, the State has voluntarily waived its immunity. However, this type of waiver is implied or constructive, and does not evidence the "clear declaration" that the Supreme Court would now require. As Justice Scalia noted:

"The whole point of requiring a 'clear declaration' by the State of its waiver is to be certain that the State in fact consents to suit. But there is little reason to assume actual consent based upon the State's mere presence in a field subject to congressional regulation. *There is a fundamental difference between a State's expressing unequivocally that it waives its immunity, and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity.* In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought by individuals. That is very far from concluding that the State made an 'altogether voluntary' decision to waive its immunity."

7. "The Constitution empowers Congress to 'lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.' Art. I, § 8, cl. 1. Incident to this power, Congress may attach conditions on the receipt of federal funds..." *South Dakota v. Dole*, 483 U.S. 203, 206 107 S.Ct. 2793, 2795–2796, 97 L.Ed.2d 171 (1987).

*College Savings Bank,* 527 U.S. at 680–681, 119 S.Ct. at 2228 (internal citations omitted)(emphasis added).

Plaintiff's reliance on the Spending Clause can not change the nature of the Defendant's waiver from constructive to express.[8]

Further, in examining the nature of the State's waiver this Court must take into consideration the "change in landscape" that has occurred as a result of the Supreme Court's decision in *Garrett.* In 1994–1995, when the activity that Plaintiff alleges violated the RA occurred, Defendant could be sued for monetary damages in federal court under the ADA. Accordingly, the decision of whether or not to accept funds and waive its Eleventh Amendment immunity was a moot point at that time, because Defendant believed, and justifiably so, that its immunity had *already* been abrogated by Congress through the ADA. Plaintiff is thus asking this Court to attach tremendous significance to a decision that could not possibly have had *any* significance at the time it was made. In other words, Plaintiff is suggesting the possibility that a constitutional right could be waived when the holder of that right either did not know it held that right, or thought the right already been waived. Clearly, there exists no constitutionally vested right or privilege that would be considered waived in such a manner. *College Savings Bank,* 527 U.S. at 681–682, 119 S.Ct. at 2229. Accordingly, it is clear that a waiver under the present circumstances could not possibly amount to the "clear declaration" required before this Court can find that the Defendant has waived its rights under the Eleventh Amendment.

## IV. Conclusion

As Defendant's Eleventh Amendment immunity has not been abrogated or waived, Defendant's assertion of that immunity deprives this Court of subject matter jurisdiction. Accordingly, pursuant to Fed.R.Civ.P. 12(h)(3), this matter is dismissed without prejudice.

---

8. As it appears that Defendant did not expressly waive its Eleventh Amendment immunity, this Court does not reach a decision regarding whether or not Congress' conditional grant under the RA was proper under the standards enumerated in *South Dakota v. Dole, supra,* and its progeny.