Cheryl A. JOLLIFFE, Plaintiff,

v.

Roger W. MITCHELL, Sr., Sheriff, of Culpeper County, Defendant.

Civil Action No. 96–00117–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 17, 1997.

Christopher R. Rau, Krippendorf & Associates, Arlington, VA, for Plaintiff.

Rosalie V. Pemberton, Joseph Ross Newell, III, Timberlake, Smith, Thomas & Moses, P.C., Staunton, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this court referred the above-captioned case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to review by this court. On October 24, 1997, the Magistrate Judge filed his Report, recommending denial of summary judgment for the defendant. Defendant filed "Defendant's Objections to Report and Recommendation" on November 6, 1997. Plaintiff filed "Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge dated October 24, 1997" on November 3, 1997. Said objections having been timely and appropriately lodged, this court must undertake a *de novo* review of the entire case. *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir.1982). After a thorough examination of the plaintiff's and defendant's objections, as well as of the applicable law, the documented record, and the Report and Recommendation, this court overrules all objections.

### I. Background

Cheryl A. Jolliffe was employed as a Deputy Sheriff with the Culpeper County Sheriff between May 1985 and February 1996. Roger W. Mitchell was elected to the office of Sheriff of Culpeper County, to replace Robert E. Peters on January 1, 1996. On December 22, 1995 Sheriff Mitchell informed Ms. Jolliffe of his decision to reappoint her to the same position. During Sheriff Peters' tenure, Ms. Jolliffe allegedly had attendance problems. Although said problems were not documented until January of 1996, her work documentation reveals that she had a sick leave deficit of more than 24 days (Sheriff Peters donated all leave to her before stepping down so that she might begin the new administration with a clear slate). On January 2, 1996 Ms. Jolliffe was involved in a car accident in which she was charged. After this accident, Ms. Jolliffe states that she was unable to return to her duties. On January 11, 1996 the defendant informed the plaintiff that she had no sick or annual leave left on her account and required her to provide verification of her illness. Plaintiff states that she provided such verification. Nonetheless, on February 7, 1996, defendant notified plaintiff by letter that her employment with the Culpeper County Sheriff was terminated effective on that date.

Plaintiff alleged originally that the Sheriff individually and in his capacity as Sheriff, and/or the County of Culpeper violated her rights under the Family and Medical Leave Act of 1993 (FMLA) by improperly calculating her available leave and by failing to inform her of her FMLA rights. She also asserted that the Sheriff violated her rights her Section 1983 by intentionally seeking to deprive her of her FMLA rights. As relief, plaintiff requested monetary compensation for back wages and interest, reinstatement, an injunction against the Sheriff depriving her of her FMLA rights, and attorneys' fees. The defendant filed a motion to dismiss. This court denied the motion to dismiss as to the FMLA claim but granted it as to the Section 1983 claim. Defendant Roger W. Mitchell now seeks summary judgment on the ground that the Eleventh Amendment of the Constitution prohibits plaintiff's FMLA claims. The magistrate judge held a hearing on October 8, 1997 and issued findings and conclusions from the bench. In a Report and Recommendation, filed October 24, 1997, Magistrate Judge Crigler incorporated his oral findings and conclusions and recommended denial of the motion for summary judgment on the grounds that Congress abrogated Eleventh Amendment immunity in the Family Medical Leave Act, 29 U.S.C. § 2601–2654 (West Supp.1997). Plaintiff has objected that the district court did not reject a finding of congressional authority to abrogate sovereign immunity and that the district court did not find that sovereign immunity would bar the FMLA claim. Defendant objects that the FMLA was not passed pursuant to the a post-Eleventh Amendment constitutional provision, that plaintiff's counsel participated in the framing of a recommendation, and that the July 29, 1997 order of this court found the existence of sovereign immunity and, upon proof of the origin of funds to pay any damages, would prohibit certain monetary damages.

*Standard of Review*

Defendants are entitled to summary judgment only if there are no genuine disputed issues of material fact and if defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Defendants have the initial burden to demonstrate that no such genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once defendants meet this burden, plaintiff must come forward with affidavits, depositions, or other admissible evidence, to show that material facts remain in dispute. *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). The facts, and the inferences therefrom, must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995). Nevertheless, a "mere ... scintilla of evidence" will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must issue. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

*Analysis*

■ As both parties have objected to the characterization of this court's comments in its memorandum opinion of July 29, 1997, this court finds it appropriate to first address the nature of those comments. At that time, the court deferred further consideration of the sovereign immunity issue until further discovery could be completed as to the nature of the financial arrangements between the state of Virginia and its constitutional officer, the sheriff. At this time, the court has reviewed the arguments of the parties, the FMLA, the Eleventh Amendment, and the case law and concludes that the FMLA abrogates sovereign immunity.

■ The Eleventh Amendment of the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." Although the language of the amendment seems to bar all suits against the states. the Supreme Court has recognized over the years certain exceptions to sovereign immunity. A state may waive sovereign immunity and consent to suit in its own law, although such waiver and consent must be clear and express. *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882–83, 27 L.Ed. 780 (1883). Second, a federal statute may abrogate the Eleventh Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Finally, suit may be brought only against an officer of the state for prospective relief for his unconstitutional actions. *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908).

■ The Supreme Court has recently ruled that sovereign immunity may be abrogated by federal statute only if the Constitutional provision underlying the statute was enacted after the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 51, 116 S.Ct. 1114, 1121, 134 L.Ed.2d 252 (1996). *Seminole Tribe* holds only after the enactment of the Eleventh Amendment did Congress possess the constitutional power to abrogate states' immunity. 517 U.S. at 51, 116 S.Ct. at 1121. As the court frames the question, "Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Id.*

Section 2601 of Title 29 of the United States Code outlines the findings of Congress which underlie the congressional desire to enact the Family Medical Leave Act. Two of the findings are particularly relevant to any discussion of the constitutional principles underlying the FMLA: "Congress finds that— ... (5) due to the nature of the roles of men and women in our society, the primary re-

sponsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it affects the working lives of men; and (6) employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees and applicants for employment who are of that gender." Consistent with its concern about inequality in the work place, Congress explained that the purpose of the FMLA is to achieve a balance between the needs of families and the needs of the workplace "in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons." 29 U.S.C. § 2601(b)(4)(West 1997 Supp.). The combination of the express language of section 2601(b)(4) and the apparent congressional concern with equal protection in the workplace convince this court that the Fourteenth Amendment is, indeed, the constitutional provision underlying the FMLA. Because the Fourteenth Amendment forms the basis for the FMLA, Congress had the authority in constructing the FMLA to abrogate sovereign immunity.

Because this court finds that Congress had the requisite authority to abrogate sovereign immunity in the FMLA, plaintiff's objections to this finding on the part of the magistrate judge are denied as they are without merit.

■ In order for a statute to abrogate sovereign immunity, however, Congress must make clear, in the statute itself, that it intends the statute to do so. The Supreme Court has explained that Congress must express its intention to abrogate the Eleventh Amendment in "unmistakable language in the statute itself." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985). The Court has further noted, "We have been unwilling to infer that Congress intended to negate the States' immunity from suit in

federal court, given 'the vital role of the doctrine of sovereign immunity in our federal system.'" *Welch v. Texas Dept. of Hwys. & Transp.*, 483 U.S. 468, 474, 107 S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987). Thus, the courts examine the statute at issue carefully before finding abrogation *See Atascadero*, 473 U.S. at 239–40, 105 S.Ct. at 3146 (holding that statute's language, "any recipient," lacked sufficient clarity to include states and, therefore, waive sovereign immunity); *Welch v. Texas Dept. of Hwys. & Transp.*, 483 U.S. at 474, 107 S.Ct. at 2946 (holding Jones Act insufficiently clear to abrogate immunity); *Fitzpatrick v. Bitzer*, 427 U.S. at 456, 96 S.Ct. at 2671 (holding Title VII abrogates the Eleventh Amendment because it is based in Fourteenth Amendment which limits state authority in other ways as well).

*Fitzpatrick v. Bitzer* is illustrative of the degree of clarity necessary to rend the protective cover of the Eleventh Amendment. In *Fitzpatrick*, the statute at issue, 42 U.S.C. § 2000e–2, makes liable for Title VII violations "employers" who discriminate on the basis of race, color, religion, sex, or national origin. "Employer" is defined as "a person engaged in an industry affecting commerce" in various ways. 42 U.S.C. § 2000e(b) (West 1994) "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a) (West 1994).

The language of the FMLA clearly expresses an intent to abrogate sovereign immunity. The FMLA defines "employer" to include "any 'public agency', as defined in section 203(x) of this title." 29 U.S.C. § 2611(4)(A)(iii) (West Supp.1997). Section 203 defines public agency to include "the government of a State or political subdivision thereof, any agency of ... a State." 29 U.S.C. § 203(x) (West 1978).[1] The language could

---

1. The court notes here the incongruity of using a statute without abrogation authority under *Seminole Tribe* to support the proposition of clear abrogation. However, the FMLA merely incorporates the language of the Fair Labor Standards Act and not its constitutional underpinnings. To the extent that defendant objected to this analy-

not be more clear. Therefore, sovereign immunity has been abrogated by the express language of the FMLA.

The magistrate judge correctly determined that the abrogation of sovereign immunity renders further Eleventh Amendment analysis unnecessary. Defendant's objections as to the magistrate's failure to address the source of funding for any damages adjudged against the sheriff are overruled. Defendant's objection as to the role of plaintiff's counsel in the magistrate's declaration of findings at the hearing is also overruled.

## II. Conclusion

After careful *de novo* review of the entire file, this court adopts the recommendations of the magistrate judge, denies the defendant's motion for summary judgment, and overrules both parties' objections to the report and recommendation.

sis, the objection is overruled. *See* at ——, 116 S.Ct. at 1121.