RONEY, Senior Circuit Judge:
These two consolidated cases appeal the grant of summary judgments to two defendant Alabama state agencies on the ground of sovereign immunity. They raise the question that is being litigated in various jurisdictions of whether a state is immune from suits by state employees asserting rights under certain federal laws. The three statutes here are: the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213; Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794; and the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654. Following recent precedent in this Circuit, we hold that the state is not immune from suit under the ADA and the Rehabilitation Act and reverse the judgments of the district court against plaintiffs Patricia Garrett and Milton Ash as to those two statutes and remand the two cases for further proceedings. As to the FMLA, we hold that, although it might well not be immune from suit under certain other provisions of the Act, a decision we need not make, the state is immune from suit under the specific provisions at issue here. We therefore affirm the district court as to the summary judgment on that cause of action against plaintiff Patricia Garrett, the only plaintiff to make a claim under the FMLA.
Although generally called Eleventh Amendment immunity, which amendment simply bars a federal court from hearing claims against a state by a citizen of another state,[1] it has long been recognized that each state is a sovereign entity in our federal system and is not amenable to suit by an individual without its consent. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).
Under certain circumstances, however, the United States Congress can pass laws which give individual citizens a right of action in federal court against an unconsenting state. Those circumstances require first, that “Congress has ‘unequivocally expresse[d] its intent to abrogate the immunity,’ ” which “must be obvious from ‘a clear legislative statement,’ ” and second, that Congress has acted “pursuant to a valid exercise of power.” Seminole Tribe of Florida v. Florida, 517 U.S. at 55, 116 S.Ct. 1114.
*1217 So far, the Supreme Court has held that Congress can abrogate state immunity only when it acts pursuant to section 5, the enforcement provision of the Fourteenth Amendment to the Constitution, which provides that “[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article.” U.S. Const, amend. XIV, § 5. The Court has held that Congress does not have authority to abrogate state sovereign immunity when it acted only pursuant to the Commerce Clause. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).
This frames the issue in this field of developing law: were these three statutes passed with the unequivocal and clear intent to give individuals a right of action against a state, and do these statutes reflect a valid exercise of congressional power under the Fourteenth Amendment.
The Supreme Court has laid out a few guidelines in recent cases. In City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court struck down the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1 (1994), an act that Congress purportedly passed pursuant to its Fourteenth Amendment enforcement powers, and in direct response to the Supreme Court’s decision in Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In Smith, the Court had held that the Free Exercise Clause of the First Amendment does not require states to justify by a compelling interest generally applicable, neutral laws that coincidentally burden religious practices. See Smith, 494 U.S. at 885-887, 110 S.Ct. 1595. In direct response to Smith, Congress passed RFRA, which required all laws that burden a group’s religion, even neutral laws of general applicability, to be narrowly tailored and justified by a compelling interest. See 42 U.S.C. § 2000bb-1. In striking down RFRA, the Supreme Court warned that section 5 of the Fourteenth Amendment grants Congress power to enforce the Fourteenth Amendment, not to define the substance of the amendment, so that Congress’ power is remedial in nature. See Boerne, 521 U.S. at 519, 117 S.Ct. 2157. To qualify as remedial, “[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.” 521 U.S. at 520, 117 S.Ct. 2157.
In Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, — U.S. —, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), a patentee brought an action against a state agency alleging infringement of a patented apparatus and method for administering college investment programs. The Court held that the Patent and Plant Variety Protection Remedy Clarification Act could not be sustained under the City of Boeme analysis as legislation enacted to enforce any guarantee of the Fourteenth Amendment. See College Savings Bank, 119 S.Ct. at 2202. In looking at whether the Patent Remedy Act was remedial or preventive legislation, the Court stated, “we must first identify the Fourteenth Amendment ‘evil’ or ‘wrong’ that Congress intended to remedy, guided by the principle that the propriety of § 5 legislation -‘must be judged with reference to the historical experience ... it reflects.’ ” College Savings Bank, 119 S.Ct. at 2207, citing City of Boerne, 521 U.S. at 525, 117 S.Ct. 2157. The Court then looked to the legislative history to see if there was evidence of a pattern of constitutional violations perpetrated by the states, such as there were in the voting rights cases, and found none. The Court noted that Congress barely considered the availability and constitutional adequacy of state law remedies. The Court noted that while the “lack of support in the legislative record is not determinative ... identifying the targeted constitutional wrong or evil is still a critical part of our § 5 calculus.... ” 119 S.Ct. at 2209. The Court said that the record offered only “scant support for Congress’ conclusion that states were depriving patent owners of property without due process of law by *1218 pleading sovereign immunity in federal court patent actions.” 119 S.Ct. at 2209.
With these guidelines in mind, we consider each of the acts at issue in this case.
/. The ADA
Congress having unequivocally expressed its intent for the ADA to abrogate sovereign immunity, 42 U.S.C. § 12202 (1994) (“A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of [the ADA].”), this Court in Kimel v. State Bd. of Regents 139 F.3d 1426, 1433 (11th Cir.1998), cert. granted, — U.S. —, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999) has already held that the ADA is a valid exercise of the Enforcement Clause of the Fourteenth Amendment and that the states do not have sovereign immunity from claims brought under the ADA. We note that Kimel reversed a district court decision and was decided by our Court after the district court had made its determination in this case. We, of course, are bound by the decision of the Court in Kimel. See United States v. Woodard, 938 F.2d 1255, 1258 (11th Cir.1991), cert. denied, 502 U.S. 1109, 112 S.Ct. 1210, 117 L.Ed.2d 449 (1992). We note also that certiorari has been granted in Kimel and any resulting decision of the Supreme Court will probably catch up with this case before a final determination of the merits of the plaintiffs’ claims.
We, therefore, reverse the summary judgment entered for the University of Aabama at Birmingham Board of Trustees and against Patricia Garrett on her ADA claim in Appeal No. 98-6069 (D.C. Docket No. CV-97-AR-92-S), and the summary judgment for the Aabama Department of Youth Services and against Milton Ash on his ADA claim in Appeal No. 98-6070 (D.C.Docket No. CV-97-AR-2179-S), and remand for further proceedings.

II. The Rehabilitation Act

In our judgment, the decision under the Rehabilitation Act is also controlled by this court’s decision as to the ADA in Kimel. The language of the Rehabilitation Act as to congressional intent to abrogate a states’ immunity from suit in federal court is as clear as it was under the ADA. See 42 U.S.C. § 2000d-7(a)(1) (1994) (“A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of Section 504 of the Rehabilitation Act of 1973.... ”). The statutes serve the same purpose and were born of the same history of discrimination:
The Supreme Court has previously held that the disabled are protected against discrimination by the Equal Protection Clause. See City of Cleburne, 473 U.S. at 450, 105 S.Ct. at 3259-60. Here, the purpose of both the ADA and section 504 of the Rehabilitation Act is to prohibit discrimination against the disabled. See 42 U.S.C. § 12101(b)(ADA); 29 U.S.C. § 701(b)(1)(F)(Rehabilitation Act). In both acts, Congress explicitly found that persons with disabilities have suffered discrimination. See 42 U.S.C. § 12101(a)(ADA); 29 U.S.C. § 701(a)(5)(Rehabilitation Act). Both the ADA and the Rehabilitation Act therefore are within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court.
Clark v. State of California, 123 F.3d 1267, 1270 (9th Cir.1997), cert. denied, — U.S. —, 118 S.Ct. 2340, 141 L.Ed.2d 711(1998).
We, therefore, reverse the summary judgment entered for the University of Aabama at Birmingham Board of Trustees and against Patricia Garrett on her Rehabilitation Act claim in Appeal No. 98-6069 (D.C. Docket No. CV-97-AR-92-S), and the summary judgment for the Alabama Department of Youth Services and against Milton Ash on his Rehabilitation Act claim in Appeal No. 98-6070 *1219 (D.C.Docket No. CV-97-AR-2179-S), and remand for further proceedings.

III. FMLA

Patricia Garrett is the only plaintiff in this consolidated appeal who asserts a claim under the FMLA. Although the FMLA may be most commonly known for its provisions affording employees leave for the birth or adoption of a child or to care for a child, spouse or parent with a serious health condition, the provision at issue here deals with leave for the employee due to her own serious health condition. See 29 U.S.C. § 2612(a)(1)(D)(“[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]eeause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.”)
Plaintiff Patricia Garrett had worked for the University of Alabama since 1977 and had received several promotions, including one as recently as June 1992, when she was promoted to Director of OB/GYN/Neonatal Services. In August 1994, Garrett was diagnosed with breast cancer and underwent a lumpectomy and continued radiation and chemotherapy treatment through January 1995. Garrett alleges the University of Alabama repeatedly threatened to transfer her to a less demanding job due to her condition. In March 1995, after being told that a subordinate was going to replace her and that she would be sent to a satellite location, Garrett took family medical leave, upon doctor’s orders. When she returned, the University demoted her to a position with a significantly lower salary.
Garrett alleges that the University of Alabama violated the FMLA by failing to offer her the same or an equivalent position upon her return, and that the university’s actions constitute retaliation under that statute. She seeks damages and equitable relief. The merits of that claim are, of course, not before this Court.
The expression of congressional intent in the FMLA is less clear than in the ADA and the Rehabilitation Act. Plaintiffs rely upon the fact that the FMLA defines an employer to include a state or state entity, see 29 U.S.C. § 2611(3), 203(e)(2)(c), and the statute’s enforcement provision, which provides that “any employer” who violates the FMLA shall be liable for a variety of penalties including “wages, salary, employment benefits ... liquidated damages ... and for such equitable relief as may be appropriate.... ” 29 U.S.C. § 2617. Judge Edmondson rejected a virtually identical argument with regard to the ADEA. See Kimel, 139 F.3d at 1431-32. Accord Humenansky v. Regents of the Univ. of Minnesota, 152 F.3d 822 (8th Cir.1998), pet.for cert. filed, 67 U.S.L.W. 3504 (Feb. 1, 1999). But see Cooper v. New York State Office of Mental Health, 162 F.3d 770 (2d Cir.1998), pet. for cert. filed, 67 U.S.L.W. 3614 (Mar. 23, 1999); Scott v. Univ. of Mississippi, 148 F.3d 493 (5th Cir.1998); Coger v. Board of Regents, 154 F.3d 296 (6th Cir.1998), pet. for cert. filed, 67 U.S.L.W. 3364 (Nov. 16, 1998); Goshtasby v. Board of Trustees, 141 F.3d 761 (7th Cir.1998); Keeton v. Univ. of Nevada Sys., 150 F.3d 1055 (9th Cir.1998); Migneault v. Peck, 158 F.3d 1131 (10th Cir.1998), pet. for cert. filed, 67 U.S.L.W. 3496 (Jan. 20, 1999).
Without deciding this issue, which the Supreme Court will probably resolve in consideration of its grant of certiorari in Kimel, we hold in this case that Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the provision at issue here. Thus we affirm the district court under the second prong of the test set forth in Seminole Tribe of Florida, 517 U.S. at 54, 116 S.Ct. 1114 (1996).
In discussing Congress’ enforcement power, the Supreme Court emphasized that its power is “remedial.” City of Boerne, 521 U.S. at 519, 117 S.Ct. 2157. Congress acts within its authority under the Fourteenth Amendment if the court can perceive a basis upon which Congress might predicate a judgment that the state action “constituted an invidious discrimina *1220 tion in violation of the Equal Protection Clause.” Katzenbach, 384 U.S. at 656, 86 S.Ct. 1717. In other words, “we must first identify the Fourteenth Amendment ‘evil’ or ‘wrong’ that Congress intended to remedy, guided by the principle that the propriety of any § 5 legislation ‘must be judged with reference to the historical experience ... it reflects.’ ” College Savings Bank, 119 S.Ct. at 2207, citing City of Boerne, 521 U.S. at 525, 117 S.Ct. 2157.
Although the statute invokes the Equal Protection Clause in its purpose section, it is not in relation to the provision allowing leave to an employee with a serious health condition.
The statute states as its first two purposes:
(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;
(2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition.
29 U.S.C. § 2601(b)(1),(2).
The statute seeks to accomplish these purposes
(4) ... in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons(including maternity-related disability) and for compelling family reasons, on a gender-neutral basis; and
(5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause.
29 U.S.C. § 2601(b)(4),(5).
In reviewing the legislative history, we found only scant references to this provision. Serious health conditions are not necessarily related to family and gender discrimination. Plaintiffs pointed us to passages of the Senate Report, which contained the story of a cancer patient who, despite her good work history was fired after developing colon cancer; and to the more extensive testimony of the vice president of the National Coalition for Cancer Survivorship, who testified with regard to the type and underlying causes of discrimination suffered by cancer survivors. She also testified that “25 percent of all cancer survivors, over one million Americans, experience some form of employment discrimination solely because of their cancer history.” This type of anecdotal legislative history is insufficient to indicate Congress had identified particular unconstitutional actions by the states involving serious health conditions irrespective of gender or family situations.
Plaintiffs contend that one of the FMLA’s principal purposes is to prevent gender discrimination and to protect women from employment discrimination due to issues regarding pregnancy, child care, and caretaking of family members. Assuming this is so, plaintiffs have failed to make even a faint connection between this purpose and the particular section of the statute under review.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State. U.S. Const. amend. XI.