RULING ON MOTION TO DISMISS
 

 NEVAS, District Judge.
 

 The plaintiff, Dennis Philbrick (“Phil-brick”), brings this action against the defendant, the University of Connecticut (“UConn”), alleging violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654 (“FMLA”), breach of the covenant of good faith and fair dealing, and defamation of character.
 

 Now pending before the court is UConn’s motion to dismiss. For the reasons that follow, that motion [doc. # 23] is GRANTED.
 

 
 *196
 

 STANDARD
 

 A party may move to dismiss because of lack of subject matter jurisdiction at any time during the course of an action.
 
 See
 
 Rules 12(b)(1) & 12(h)(3), Fed.R.Civ.P.;
 
 John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,
 
 588 F.2d 24, 27 (2d Cir.1978). Once challenged, the burden of establishing a federal court’s subject matter jurisdiction rests
 
 on
 
 the party asserting jurisdiction.
 
 See Thomson v. Gaskill,
 
 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942);
 
 Grafon Corp. v. Hausermann,
 
 602 F.2d 781, 783 (7th Cir.1979). Unlike a motion to dismiss pursuant to Rule 12(b)(6), however, dismissals
 
 for
 
 lack of subject matter jurisdiction are not predicated on the merits of the claim.
 
 See Exchange Nat’l Bank of Chicago v. Touche Ross & Co.,
 
 544 F.2d 1126, 1130-31 (2d Cir.1976).
 

 In a motion to dismiss for lack of subject matter jurisdiction, a court construes. the complaint broadly and liberally in conformity with the principle set out in Rule 8(f), Fed.R.Civ.P., “but argumentative inferences favorable to the pleader will not be drawn.” 5A Charles A. Wright & Arthur R. Miller,
 
 Federal Practice and Procedure
 
 § 1350 at 218-19 (1990 & Supp. 1991) (‘Wright & Miller”). The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction.
 
 See Land v. Dollar,
 
 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947);
 
 Exchange,
 
 544 F.2d at 1130. However, litigants cannot waive subject matter jurisdiction by express consent, conduct, or estoppel.
 
 See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
 
 456 U.S. 694, 700, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, § 3522 at 66-67.
 

 FACTS
 

 The Court accepts the following facts as true for the purposes of this motion.
 

 In December 1996, Philbrick informed UConn, his employer at the time, that he was suffering from stress due to having to contend with both the demands of his job and the necessity of caring for his mother who had Alzheimer’s Disease.
 
 (See
 
 Compl. ¶ 6.) He was absent from work on many occasions, sometimes without preapproval, due to his need to care for his mother.
 
 (See id.)
 
 These absences continued into and throughout most of 1997.
 
 (See id.
 
 ¶ 7.) Eventually, UConn terminated Philbrick due to his excessive absenteeism.
 
 (See id.
 
 ¶ 10.)
 

 Philbrick alleges that his termination violates the FMLA because UConn had been notified of his need for the absences.
 
 (See id.
 
 ¶ 11.) In addition, he claims that UConn breached its covenant of good faith and fair dealing by refusing to respond to his proper notice and request for FMLA leave.
 
 (See id.
 
 ¶¶ 14-15.) Lastly, he alleges that UConn defamed his character when it amended his personnel file to state that he was involuntarily terminated and could not seek future employment with UConn or any other Connecticut state agency.
 
 (See id.
 
 ¶ 18.)
 

 DISCUSSION
 

 UConn argues that Philbrick’s FMLA and state law claims are barred by the Eleventh Amendment which grants states sovereign immunity from suits in federal court.
 
 See
 
 U.S. Const. Amend. XI. In particular, UConn asserts that Connecticut has not waived its sovereign immunity for such claims and that Congress has not effectively abrogated the sovereign immunity of the states for such claims. Phil-brick responds to the motion by arguing that Congress did abrogate the states’ sovereign immunity when it passed the FMLA.
 

 I.
 
 State Sovereign Immunity
 

 The Eleventh Amendment states:
 

 [t]he judicial power of the United States shall not be construed to extend to any
 
 *197
 
 suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by Citizens or Subjects of any Foreign State.
 

 This language not only prohibits suits against states brought by citizens of other states in federal court, but, implicitly, suits against a state in federal court brought by its own citizens.
 
 See Edelman v. Jordan,
 
 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 

 Eleventh Amendment immunity, however, is not absolute. Indeed, there are two ways in which a state may be divested of its immunity under the Eleventh Amendment.
 
 See Close v. State of New York,
 
 125 F.3d 31 (2d Cir.1997). First, “a state may waive its immunity and agree to be sued in federal court.”
 
 Id.
 
 Second, “[Cjongress may abrogate a state’s sovereign immunity through a statutory enactment.”
 
 Id.
 
 Neither party has argued that the State of Connecticut has waived its immunity from suits arising under the FMLA. Accordingly, the court must determine whether Congress unequivocally expressed its intent to abrogate state sovereign immunity from such suits and if it did, whether Congress acted pursuant to a valid grant of constitutional authority.
 
 See Seminole Tribe of Fla. v. Florida, 517
 
 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).
 

 A.
 
 Congress’ Intent to Abrogate Sovereign Immunity
 

 “Congress may abrogate the states’ constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute.”
 
 Kimel v. Florida Bd. of Regents,
 
 - U.S. -, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000) (internal quotations marks and citations omitted). The FMLA states that “[ajn action to recover damages or equitable relief ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction ...” 29 U.S.C. § 2617(a)(2). The FMLA incorporates the definition of “public agency” as it appears in the Fair Labor Standards Act (“FLSA”) at 29 U.S.C. § 203(x).
 
 See
 
 29 U.S.C. § 2611 (4)(A)(iii). The FLSA defines “public agency” as including a state or any agency of the state.
 
 See
 
 29 U.S.C. § 203(x).
 

 The Second Circuit, addressing the FLSA, has held that this language functions as a clear statement of congressional intent to abrogate the states’ immunity from suit under the Eleventh Amendment.
 
 See Close,
 
 125 F.3d at 36;
 
 see also McGregor v. Goord,
 
 18 F.Supp.2d 204, 207 (N.D.N.Y.1998). Read as a whole, the plain language of these statutory provisions demonstrates Congress’ intent to subject states to suits for money damages at the hands of individual employees.
 
 See Kimel,
 
 120 S.Ct. 631, 640 (explaining that cases have never required Congress to make its clear statement in a single section or in statutory provisions enacted at the same time). Moreover, most district courts considering this statutory language have found that these provisions provide sufficient evidence of Congress’ intent to abrogate the Eleventh Amendment.
 
 See McGregor,
 
 18 F.Supp.2d at 207 (noting that the statutory language functions as a clear statement of congressional intent to abrogate the states’ Eleventh Amendment immunity);
 
 Jolliffe v. Mitchell,
 
 986 F.Supp. 339, 342 (W.D.Va.1997) (explaining that “[tjhe FMLA clearly expresses an intent to abrogate sovereign immunity”);
 
 Knussman v. State of Md.,
 
 935 F.Supp. 659, 663 (D.Md.1996) (finding unequivocal textual evidence in the FMLA that Congress intended to abrogate the Eleventh Amendment);
 
 bul see Driesse v. Florida Bd. of Regents,
 
 26 F.Supp.2d 1328, 1331 (M.D.Fla.1998) (holding the opposite). Accordingly, the court finds that Congress has unequivocally expressed its intent to abrogate the States’ Eleventh Amendment immunity.
 

 B.
 
 Congress’ Power To Abrogate State Sovereign Immunity
 

 Section 5 of the fourteenth Amendment grants Congress the authority to ab
 
 *198
 
 rogate the states’ sovereign immunity. In
 
 Fitzpatrick v. Bitzer,
 
 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court recognized that “the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment.”
 
 Id.
 
 at 456, 96 S.Ct. 2666 (citation omitted). The Supreme Court has reaffirmed the validity of that congressional power on numerous occasions.
 
 See Kimel,
 
 120 S.Ct. 681, 644. Accordingly, the issue before the court is whether Congress’ abrogation of state sovereign immunity under the FMLA was appropriate legislation under § 5 of the Fourteenth Amendment.
 

 Resolution of this issue involves a three-prong inquiry referred to as the
 
 Katzen-bach
 
 test: “(1) whether the statute may be regarded as an enactment to enforce the Equal Protection Clause; (2) whether it is plainly adapted to that end; and (3) whether it is not prohibited by but is consistent with the letter and spirit of the Constitution.”
 
 Katzenbach v. Morgan,
 
 384 U.S. 641, 651, 86 S.Ct. 1717, 1723, 16 L.Ed.2d 828 (1966).
 

 1.
 
 Statute Enacted to Enforce the Equal Protection Clause
 

 “The simplest way to meet [the first] requirement is for Congress to declare explicitly that the legislation is passed to enforce Fourteenth Amendment rights.”
 
 Wilson-Jones v. Caviness,
 
 99 F.3d 203, 210 (6th Cir.1996);
 
 see also McGregor,
 
 18 F.Supp.2d at 207. The congressional purpose in enacting the FMLA was to promote the stability and economic security of the family “in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex” and to “promote the goal of equal employment opportunity for men and women.” 29 U.S.C. § 2601(b)(4) and (5). To support its conclusion that the FMLA was needed to enforce equal protection rights in the workplace, Congress found that:
 

 due to the nature of the roles of men and women in our society, the primary responsibility for family caretaking often falls on women, and such responsibilities affects the working lives of women more than it affects the working fives of men; and ... employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees and applicants for employment who are of that gender.
 

 Id.
 
 § 2601(a)(5)-(6). Based upon this language, this court, along with numerous other courts which have considered the question, finds that the FMLA meets the first prong of the
 
 Katzenbach
 
 test.
 
 [1]
 

 See Driesse,
 
 26 F.Supp.2d at 1333 (finding that the FMLA, on its face, provides that it is an attempt to enforce the Equal Protection Clause);
 
 McGregor,
 
 18 F.Supp.2d at 207 (finding that the FMLA was an attempt to enforce the Fourteenth Amendment’s guarantee of equal protection).
 

 2.
 
 FMLA Plainly Adapted
 

 The second prong of the
 
 Katzenbach
 
 test is whether the legislation is plainly adapted to enforce the Equal Protection Clause of the Fourteenth Amendment. That is, the court must determine whether the means chosen by Congress actually fit the identified Fourteenth Amendment purpose.
 
 See McGregor,
 
 18 F.Supp.2d at 208.
 

 Under section 5 of the Fourteenth Amendment, Congress has the power to enforce the Fourteenth Amendment, but, in doing so, cannot change or define substantive law.
 
 [2]
 

 See City of Boerne v.
 
 
 *199
 

 Flores,
 
 521 U.S. 507, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997) (explaining that “[CJongress does not enforce a constitutional right by changing what the right is. It has been given the power to enforce, not to determine what constitutes a constitutional violation.”);
 
 see also Kimel,
 
 120 S.Ct. 631 (stating the same);
 
 Florida Prepaid Postsecondary Ed. Expense Bd. v. College Sav. Bank,
 
 527 U.S. 627, 119 S.Ct. 2199, 2205-06, 144 L.Ed.2d 575 (1999) (stating the same).
 

 In explaining this limitation, the Supreme Court has noted that “[wjhile the line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law is not easy to discern, Congress must have wide latitude in determining where it lies, the distinction exists and must be observed.”
 
 City of Boerne,
 
 521 U.S. at 519, 117 S.Ct. 2157. Specifically, the Supreme Court explained that “[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.”
 
 See City of Boerne,
 
 521 U.S. at 531-33, 117 S.Ct. 2157 (striking down law on a finding that the legislative record contained minimal evidence which established widespread discrimination and that the statute was therefore not a proportional response to the supposed unconstitutional conduct);
 
 Florida Prepaid,
 
 119 S.Ct. at 2205-08 (noting that the statute, which subjected states to patent infringement suits, was not supported by any widespread pattern of patent infringement by the states and thus was not a proportional response to the alleged unconstitutional conduct);
 
 Kimel,
 
 120 S.Ct. 631, 647-50 (finding that the ADEA was not proportional and congruent to its stated end of remedying age discrimination because there wTas only “anecdotal evidence” of widespread and unconstitutional age discrimination by the states).
 

 In applying the second prong of the
 
 Katzenbach
 
 test to the FMLA, the court may examine the evidence that Congress relied on in enacting the FMLA and then determine if that evidence supports a finding that the Act was a proportional response to any unconstitutional activity. The FMLA provides twelve weeks of leave to eligible employees, i.e., employees who have been employed for 12 months by an employer for at least 1250 hours.
 
 See
 
 29 U.S.C. § 2611(2), § 2612(a)(1). An eligible employee may use this twelve week leave period (1) to care for a newborn, adopted or foster child; (2) to care for a spouse, parent, or child who has a serious health condition; or (3) for a personal serious health condition which renders the employee unable to perform his or her work functions.
 
 See
 
 29 U.S.C. § 2612(a)(1)(A)— (D). The FMLA prohibits an employer from interfering with an eligible employee’s use of leave time.
 
 See
 
 29 U.S.C. § 2615(a)(1).
 

 The issue then is whether these provisions are a proper exercise of Congress’ § 5 power “to enforce, by appropriate legislation,” the Fourteenth Amendment’s guarantee of equal protection. The Equal Protection Clause mandates that similarly situated persons be treated alike,
 
 Cleburne v. Cleburne Living Ctr., Inc.,
 
 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and it is well-established that this mandate prohibits states in most instances from discriminating on the basis of sex.
 
 See United States v. Virginia,
 
 518 U.S. 515, 534, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). Moreover, the Supreme Court has explained that there must be a “congruence and proportionality” between the means selected by Congress, i.e., the twelve week leave period for all employees regardless of gender, and the end, i.e., prevention of gender-based discrimination in the public workplace, for the legislation to be a valid exercise of Congress’ § 5 power.
 

 Notably, the majority of district courts faced with this question have held that, while one of the express purposes of the FMLA is to eliminate gender discrimination in the workplace, it goes beyond this
 
 *200
 
 stated goal by imposing substantive employment conditions.
 
 See McGregor,
 
 18 F.Supp.2d at 208;
 
 Thomson,
 
 5 F.Supp.2d at 579;
 
 Kilvitis,
 
 52 F.Supp.2d at 409.
 

 These courts have held that creating an affirmative entitlement to twelve weeks of leave distinguishes it from other statutory provisions designed to combat discrimination.
 
 See Thomson,
 
 5 F.Supp.2d at 579. In so holding, these courts reasoned that Congress dictated, without constitutional authority, that the Equal Protection Clause requires employees to be furnished with up to twelve weeks of leave per year for the reasons set forth in the Act. Consequently, these courts found that Congress exceeded the proper scope of its authority under § 5 because Congress attempted to define what the Equal Protection Clause requires.
 
 See McGregor,
 
 18 F.Supp.2d at 208.
 

 These courts also explained that the FMLA is inconsistent with the scope of equal protection rights because it eliminates the state of mind element, i.e., intent to discriminate, that is traditionally required for equal protection violations.
 
 See Ricketts v. City of Hartford,
 
 74 F.3d 1397, 1407 (2d Cir.1996) (explaining that “a claimant under the Fourteenth Amendment’s Equal Protection Clause ... must establish intentional discrimination” to prevail). As the First and Seventh Circuits have observed, the FMLA’s leave provisions do not implicate the employer’s state of mind. See
 
 Hodgens v. General Dynamics Corp.,
 
 144 F.3d 151, 159 (1st Cir.1998) (holding that “[b]ecause the issue is the right to an entitlement [under the FMLA], the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer”);
 
 Diaz v. Fort Wayne Foundry Corp.,
 
 131 F.3d 711, 712 (7th Cir.1997) (explaining that the FMLA creates substantive rights and when an employee sues, the employer may not defend by saying that it treated all employees identically). Thus, because the FMLA actually exceeds the protection against intentional discrimination previously required under the Equal Protection Clause, these courts held that Congress created a substantive law by mandating a statutory entitlement to twelve weeks leave for eligible employees without regard to the employer’s intent.
 
 See McGregor,
 
 18 F.Supp.2d at 209. In sum, these courts have held that congruence and proportionality are plainly lacking.
 
 See, e.g., id.
 

 Although there are three published district court decisions,
 
 see Biddlecome,
 
 1997 WL 124220, at *3,
 
 Knussman,
 
 935 F.Supp. at 663,
 
 Jolliffe,
 
 986 F.Supp. at 342-43, which have determined that the FMLA constitutionally abrogates the states’ immunity under the Eleventh Amendment, those cases are not controlling. In
 
 Knuss-man,
 
 the court only considered whether Congress expressed its intent to abrogate the Eleventh Amendment, but it did not consider whether Congress had acted pursuant to a valid exercise of power.
 
 See Knussman,
 
 935 F.Supp. at 663. Likewise, neither
 
 Biddlecome
 
 or
 
 Jolliffe
 
 addressed the issue.
 

 For this reason,
 
 Thomson,
 
 the first court to consider whether Congress had acted pursuant to a valid authority, determined that
 
 Biddlecome, Jolliffe
 
 and
 
 Knussman
 
 were not controlling. Moreover, every published district court decision since
 
 Thomson
 
 has determined that Congress’ abrogation of Eleventh Amendment immunity in the FMLA was not a valid exercise of its authority under § 5 of the Fourteenth Amendment.
 
 See, e.g., Sims v. University of Cincinnati,
 
 46 F.Supp.2d 736, 739 (S.D.Ohio 1999) (finding the reasoning of
 
 Thomson
 
 to be more sound and persuasive than the reasoning underlying the contrary decisions of
 
 Knussman, Biddlecome
 
 and
 
 Jolliffe).
 

 The court finds the reasoning of those cases which have found no abrogation of the states’ Eleventh Amendment immunity to be persuasive. Congruence and proportionality requires this court to balance the injury that Congress has attempted to remedy against the means Congress has chosen to achieve its remedi
 
 *201
 
 al purpose.
 
 See City of Boerne,
 
 521 U.S. at 531-82, 117 S.Ct. 2157. Thus, the FMLA must not be “so out of proportion to a preventive objective that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.”
 
 Id.
 

 Under the FMLA, Congress sought to remedy the injury of gender-based leave discrimination. However, the legislative record of the FMLA does not clearly identify widespread and pervasive evidence of gender-based leave discrimination in the workplace.
 
 Cf. Hundertmark v. State of Florida Dept. of Trans.,
 
 205 F.3d 1272 (11th Cir.2000) (explaining that in upholding the Equal Pay Act of 1963, 29 U.S.C. § 206(d), as a valid abrogation of the states’ sovereign immunity, the legislative record supported a finding of substantial gender-based wage discrimination in the workplace). Consequently, the means employed by Congress in the FMLA are not proportional to the stated goal of achieving equal treatment, regardless of gender, in the granting of leave time in the workplace.
 

 Moreover, the FMLA does not merely make it illegal for employers to treat requests for leave differently on the basis of gender. Instead, it mandates that employers provide employees with a valuable benefit, i.e., twelve weeks of leave, regardless of whether the employer treats all requests for leave in the same manner. Therefore, the FMLA does not validly enforce and remedy already existing constitutional rights; rather, it creates an affirmative entitlement not otherwise available.
 
 See Kimel,
 
 120 S.Ct. 631, 644 (explaining that Congress does not have the power to determine what constitutes a constitutional violation).
 

 Accordingly, because the FMLA does not satisfy the congruence and proportionality test expressed by the Supreme Court, it is not a valid exercise of Congress’ enforcement powers under § 5 of the Fourteenth Amendment and thus UConn’s motion to dismiss Philbrick’s FMLA claim is granted.
 
 [3]
 

 II.
 
 State Law Claims
 

 Philbrick also brings state law claims against UConn. Because the claim against UConn upon which federal question jurisdiction was based has been dismissed, the court must determine whether it is appropriate to exercise supplemental jurisdiction over Philbrick’s state law claims.
 

 Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction over a state law claim if “the district court has dismissed all claims over which it has original jurisdiction.” 28 U.S.C.A. § 1367(c)(3) (West 1993). “In deciding whether to exercise pendent jurisdiction, the district court must weigh the value of judicial economy, convenience, fairness, and comity in light of the facts of the case and the stage of the litigation.”
 
 Larkin v. Town of West Hartford,
 
 891 F.Supp. 719, 731 (D.Conn.1995) (citation and internal quotation marks omitted),
 
 aff'd,
 
 101 F.3d 109 (2d Cir.1996). After careful consideration of these factors, the court declines to exercise supplemental jurisdiction over the remaining state law claims.
 

 CONCLUSION
 

 For the reasons stated above, the defendant’s Motion to Dismiss [doc. #23] is GRANTED. The Clerk is directed to CLOSE this case.
 

 [1]
 

 . At oral argument, counsel for UConn conceded that the FMLA was enacted to enforce the Equal Protection Clause, thus satisfying the first prong of the
 
 Katzenbach
 
 test.
 

 [2]
 

 .
 
 That section provides: “The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.” U.S. Const. Amend. XIV, § 5.
 

 [3]
 

 . Because the second prong of the
 
 Katzen-bach
 
 test has not been satisfied, the court does not reach whether the third prong, i.e., whether the FMLA is not prohibited by but consistent with the letter and spirit of the Constitution, has been met.