**Genevieve SERAFIN, Plaintiff,**

v.

**State of CONNECTICUT DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES, Defendant.**

**No. Civ.A. 3:98 CV 398 C.**

United States District Court, D. Connecticut.

Sept. 29, 2000.

Igor I. Sikorsky, Jr., Law Offices of Igor I. Sikorsky, Jr., Wethersfield, Connecticut, for plaintiff.

Thomas J. Ring, Attorney General's Office, Health & Human Services, Hartford, CT, William M. Brown, Jr., Attorney General's Office, Health & Human Services, Hartford, CT, for defendant.

### *RULING ON MOTION FOR RECONSIDERATION*

DRONEY, District Judge.

Pending before the Court, on reconsideration, is the defendant's motion to dismiss [Document # 6]. For the following reasons, the motion to dismiss is DENIED.

### I. Procedural Background

The plaintiff brought this action against her former employer, the State of Connecticut Department of Mental Health and Addiction Services, Cedercrest Regional Hospital,[1] alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.,* and the Family and

---

**1.** The parties agree that the defendant is a state entity for purposes of the Eleventh Amendment.

Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, as well as other claims. The defendant moved to dismiss. The Court granted in part and denied in part the motion to dismiss, holding in part that the plaintiff's FMLA claim against the state was not barred by the Eleventh Amendment to the U.S. Constitution.

The parties have filed a joint motion for reconsideration of the Court's ruling on the motion to dismiss based on the U.S. Supreme Court's recent decision *Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). The Court granted reconsideration in light of *Kimel* and issued an order to show cause as to whether the plaintiff's ADA and FMLA claims should be dismissed for lack of subject matter jurisdiction,[2] on the ground that they are barred by the Eleventh Amendment. The parties filed supplemental briefs and the Court held a hearing to address the motion to dismiss on reconsideration.

## II. Discussion

As an initial matter, the parties agree that, based on recent decisions by the U.S. Court of Appeals for the Second Circuit, the plaintiff's ADA claim is not barred by the Eleventh Amendment. *See Kilcullen v. New York State Dep't of Labor,* 205 F.3d 77 (2d Cir.2000); *Muller v. Costello,* 187 F.3d 298 (2d Cir.1999). Accordingly, on reconsideration, the motion to dismiss is DENIED as to the plaintiff's ADA claim.

The defendant contends that the plaintiff's FMLA claim is barred by the Eleventh Amendment under *Kimel.* The Supreme Court held in *Kimel* that, in enacting the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Congress did not validly abrogate the states' sovereign immunity. *See Kimel,* 120 S.Ct. at 650. In reaching this conclusion, the Court reasoned that the ADEA did not satisfy the two-part test for abrogation of the states' sovereign immunity under *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which requires that Congress unequivocally intend to abrogate the states' sovereign immunity and that it act pursuant to a valid grant of constitutional authority. *See Kimel,* 120 S.Ct. at 640.

The defendant in this case argues that Congress did not validly abrogate the states' sovereign immunity because it did not clearly enact the FMLA pursuant to its enforcement powers under § 5 of the Fourteenth Amendment, and, even if it did, Congress exceeded those powers. The Court previously rejected this argument in denying the motion to dismiss the plaintiff's FMLA claim, and, on reconsideration, the Court affirms its previous ruling. The Court concludes that Congress unequivocally intended to abrogate the states' sovereign immunity by enacting the FMLA pursuant to its enforcement powers under § 5 of the Fourteenth Amendment, *see Hale v. Mann,* 219 F.3d 61, 67 (2d Cir.2000), and that Congress did not exceed its constitutional authority in doing so. Consequently, with respect to the specific FMLA provision at issue in this case, the FMLA is a valid abrogation of the states' sovereign immunity. *See Kimel,* 120 S.Ct. at 640, 644–45; *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. 1114.

In its initial ruling denying the motion to dismiss the plaintiff's FMLA claim, the Court cited *Jolliffe v. Mitchell,* 986 F.Supp. 339 (W.D.Va.1997), and *Biddlecome v. University of Texas,* No. 96–1872, 1997 WL 124220 (S.D.Tex. Mar.13, 1997), which held that the FMLA is a valid abrogation of the states' sovereign immunity. Since the Court issued its ruling on the motion to dismiss, however, the clear ma-

---

**2.** The Court granted reconsideration only as to the plaintiff's ADA and FMLA claims. Although the defendant moved to dismiss the plaintiff's ADA claim on exhaustion grounds, and not jurisdictional grounds, the Court issued its order to show cause as to subject matter jurisdiction of the ADA claim in order to determine what, if any, impact *Kimel* might have on its ability to consider the merits of that claim.

jority of courts that have considered this issue have reached a contrary conclusion.[3] *See, e.g., Hale,* 219 F.3d at 66–67; *Philbrick v. University of Conn.,* 90 F.Supp.2d 195 (D.Conn.2000); *McGregor v. Goord,* 18 F.Supp.2d 204 (N.D.N.Y.1998); *see also Garrett v. University of Ala. at Birmingham Bd. of Trustees,* 193 F.3d 1214 (11th Cir.1999), *cert. granted in part,* —— U.S. ——, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000); *Kilvitis v. County of Luzerne,* 52 F.Supp.2d 403 (M.D.Pa.1999); *Sims v. University of Cincinnati,* 46 F.Supp.2d 736 (S.D.Ohio1999), *aff'd,* 219 F.3d 559 (6th Cir.2000); *Thomson v. Ohio State Univ. Hosp.,* 5 F.Supp.2d 574 (S.D.Ohio 1998). Nevertheless, the Court concludes that the FMLA provision at issue here is a valid abrogation of the states' sovereign immunity.

In *Hale,* 219 F.3d at 69, the Second Circuit recently applied *Kimel* to the FMLA and held that "Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the provisions at issue here." Although the court determined that Congress enacted the FMLA under the Fourteenth Amendment in order to allow family leave while minimizing the potential for gender-based employment discrimination, *see id.* at 67–68, it held that the FMLA's grant of twelve weeks of leave to employees to deal with their own serious health conditions was "not congruent or proportional to the harms targeted by the Fourteenth Amendment." *Id.* at 69. In reaching this conclusion, the court reasoned that "[I]n light of Congress's failure to specifically find that women are disproportionately affected by serious health conditions, th[e] gender-neutral grant of leave is overbroad .... [and] cannot be understood as responsive to, or designed to prevent, un-

constitutional behavior." *Id.* at 68–69 (internal quotation marks omitted). However, the court limited its holding only to the provision of the FMLA concerning "medical leave to deal with one's own serious health condition." *Id.* at 69 (internal quotation marks omitted); *see also Garrett,* 193 F.3d at 1219.

In the instant case, the plaintiff alleges that she was terminated from her position as a psychiatric nurse on the grounds of insubordination, misconduct, and unsatisfactory attendance. *See* Compl. ¶ 10. She alleges that basing her termination on her absences—even in part—violated the FMLA. *See* Compl. ¶ 19. Construing the plaintiff's complaint in the light most favorable to her, she appears to claim that she was entitled to receive twelve weeks of leave under the FMLA, and that if she had received this leave she could not have been terminated for her absences, which were caused by a need to care for her sick mother.[4]

In contrast to the FMLA provision at issue in *Hale,* which provides leave for an employee "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1)(D), the FMLA provision at issue in this case provides leave for an employee "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Recognizing that an FMLA claim based on a family member's serious health condition is different from a claim based on one's own health condition, and after applying the *Kimel* analysis, the Court concludes that the plaintiff's FMLA

---

**3.** These courts generally have addressed the FMLA as a whole, without distinguishing between its various leave provisions; or, in contrast to the specific FMLA provision at issue in this case, they generally have addressed only the FMLA provision concerning medical leave to deal with one's own serious health

condition. *See* 29 U.S.C. § 2612(a)(1)(A)–(D); *infra* pp. 276–77.

**4.** This ruling is without prejudice to the defendant filing a motion for summary judgment as to whether the plaintiff met the factual criteria for leave under the FMLA.

claim is not barred by the Eleventh Amendment.

The Second Circuit's decision in *Hale* relied on Congress's failure to find that women are disproportionately affected by serious health conditions, as well as on the overbreadth of the remedy provided by the FMLA. *See Hale*, 219 F.3d at 68–69. However, Congress made specific findings in § 2601(a)(5) and (6) of the FMLA concerning the responsibility of caring for others:

> the primary responsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it affects the working lives of men; and ... employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees ... who are of that gender.

Based on these findings, the Court concludes that the responsibility of caring for sick family members falls disproportionately on women, and thus that such a responsibility adversely impacts women in the workforce at a greater rate than men.

As to the remedy in this case, the Court also concludes that the FMLA's grant of leave to care for sick family members is not constitutionally overbroad, even though it applies to all employees regardless of their gender. *Cf. Hale*, 219 F.3d at 68–69; *but see Philbrick*, 90 F.Supp.2d at 201. The Court reaches this conclusion on the ground that a grant of leave to care for sick family members is related to gender, *cf. Hale*, 219 F.3d at 69, because leave to care for sick family members is more often necessary for working women than men, as indicated by Congress's findings. Gender discrimination also triggers greater authority for congressional legislation under the Fourteenth Amendment than age discrimination, which was at issue in *Kimel. See Kimel*, 120 S.Ct. at 645. In addition, the grant of leave to care for sick

family members is narrowly tailored to remedy or prevent gender discrimination. By requiring employers to grant their employees twelve weeks of leave to care for sick family members, the FMLA ensures that women are not adversely impacted in their employment if they take time off from work for that purpose. Furthermore, although the FMLA's grant of leave to care for sick family members is gender-neutral, and in this sense may provide more relief than is minimally necessary to prevent discrimination against women in employment, Congress may reach a "broader swath of conduct" in its enforcement legislation than is prohibited by the Fourteenth Amendment. *Id.* at 644 Congress must have "wide latitude" in determining where the line exists between "measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law," *City of Boerne v. Flores*, 521 U.S. 507, 519–20, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), and thus the provision of a gender-neutral remedy in response to gender discrimination is not fatal to the FMLA.

Accordingly, the Court concludes that Congress has not impermissibly created a substantive right under the FMLA that is not congruent or proportional to the harms of gender discrimination targeted by the Fourteenth Amendment.[5] Unlike the leave provision for employees' serious health conditions at issue in *Hale*, which does not implicate gender-discrimination issues under the Fourteenth Amendment to the same degree, the Court concludes that the FMLA's grant of leave to care for sick family members can be understood as responsive to, or designed to prevent, unconstitutional behavior. *Cf. Hale*, 219 F.3d at 69.

Moreover, to the extent that other courts have specifically considered the FMLA's grant of leave to care for sick

---

**5.** The Court also suspects that a provision in the FMLA providing leave only for women would be constitutionally infirm, especially because many men also shoulder significant family responsibilities, including caring for sick children and other family members.

family members and have concluded that the remedy is not congruent or proportional to the harms of "gender-based leave discrimination," the Court concludes that the nature of the discrimination that Congress intended to address by enacting the FMLA is broader. *See, e.g., Philbrick,* 90 F.Supp.2d at 201. The nature of the discrimination that the FMLA was intended to remedy or prevent does not only arise from employers setting different leave policies for male and female employees, but also from gender-neutral employment policies providing limited or no leave for family care, the impact of which falls more heavily on women than men. As indicated by Congress's findings in support of the FMLA, the grant of leave to care for sick family members responds to the disproportionate impact that caring for sick family members has on women in the workforce. The leave period in the FMLA protects women from adverse employment consequences that may result from unpermitted absences caused by a need to care for sick family members. In light of this purpose, and for the reasons set forth above, the Court concludes that the FMLA is a valid abrogation of the states' sovereign immunity.

The motion to dismiss is therefore DENIED, on reconsideration, as to the plaintiff's FMLA claim on the ground that it is not barred by the Eleventh Amendment.[6]

## III. Conclusion

For the preceding reasons, the motion to dismiss [Document # 6] is DENIED. The

Court's previous ruling on the motion to dismiss otherwise remains unchanged.

---

6. The plaintiff alternatively claims that the state waived its sovereign immunity by enacting Conn.Gen.Stat. §§ 31–51nn(f) and 31–51*ll* (i). The Court concludes that the state has not expressly consented to be sued in federal court or otherwise waived its sovereign immunity unequivocally with respect to the FMLA. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 2226–28, 2229, 144 L.Ed.2d 605 (1999). The Connecticut laws guaranteeing citizens' federal rights, includ-

ing their rights under the FMLA, or granting employees additional family and medical leave rights under state law are insufficient to alter this conclusion. *See id.* at 2226 (indicating that states do not consent to suit in federal court simply by stating an intent to "sue or be sued," or by authorizing suits against them in "courts of competent jurisdiction"). The statutes cited by the plaintiff do not present a clear waiver by the state of its sovereign immunity guaranteed by the Eleventh Amendment.